[Civ. No. 17112. Second Dist., Div. Two. Mar. 17, 1950.]

GEORGE G. DeSYLVA, Plaintiff and Appellant, v. MARIE BALLENTINE et al., Defendants and Appellants.

Pacht, Warne, Ross & Bernhard, Isaac Pacht, Clore Warne and Bernard Reich for Plaintiff and Appellant.

Fink, Rolston, Levinthal & Kent for Defendants and Appellants.

WILSON, J.—This action was brought by the father of an illegitimate child for a determination of the rights and duties of the respective parties under section 196a[1] of the Civil Code and under a contract entered into between plaintiff and defendant Marie Ballentine, the child's mother.

In his complaint as amended plaintiff alleges, on information and belief, that he is the father of defendant Stephen William Ballentine; he is willing and able to give and has given the infant suitable support; defendant Marie Ballentine

---

[1]Section 196a: ''The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, or by a guardian ad litem appointed upon the written application or with the consent of his mother; provided, that such application or consent shall not be necessary if the mother is dead or incompetent, and in such action the court shall have power to order and enforce performance thereof, the same as under sections 137, 137.5, 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife.''

is the mother of the infant; on October 30, 1945, plaintiff and Marie Ballentine entered into an agreement which provided for the support and maintenance of Marie Ballentine and the child and also for the transfer by plaintiff to Miss Ballentine of certain real property; the agreement was obtained by defendant Marie Ballentine by fraud and deceit; she had engaged in a course of threats and intimidation against plaintiff for the purpose of obtaining money and property for herself and threatened to subject plaintiff and his wife to public scandal and disgrace; she had promised she would cease such threats and intimidations and would not publicize their relationship if allowances were made for the benefit of herself and the child and would discontinue her demands for money and property for herself; in reliance on such promises plaintiff entered into the contract of October 30, 1945; defendant Marie Ballentine never intended to fulfill her promise and instead intended to continue to coerce and intimidate plaintiff for her own benefit; she subsequently repudiated and rescinded the agreement by refusal to accept plaintiff's tender of payments and by demanding additional sums.

Defendants filed an answer denying the allegations of fraud and that there was any repudiation or rescission on the part of defendant Marie Ballentine of the contract. Defendants also filed a cross-complaint by which they sought a determination that plaintiff is the father of the child, reasonable support of the child, security for plaintiff's compliance with the order of court and counsel fees. Plaintiff filed an answer to the cross-complaint.

The trial court found that plaintiff is the father of Stephen William Ballentine; both plaintiff and defendant Marie Ballentine dealt at arm's length in the negotiations immediately preceding the execution of the contract of October 30, 1945, and both had advice of counsel; plaintiff was not influenced nor imposed upon by any representations made to him by Marie Ballentine nor was there any fraud, deceit, coercion or intimidation committed or exercised by her in the inducement or execution of the contract; the contract was not repudiated, rescinded or abandoned by Marie Ballentine; the parties have not considered negotiations for additional provision for the minor to be inconsistent with the validity and continued existence of the contract; the minor child requires $350 a month for support and maintenance; it is not necessary that plaintiff provide security for the performance of the order of court.

The court adjudged that the contract of October 30, 1945, is a valid and existing contract; that the minor child is not bound by it nor are his rights limited thereby. Plaintiff was ordered to pay $250 a month for the support, maintenance and education of the child until March 10, 1949, and $350 a month thereafter during the minority of the child and until further order of court. Defendant Marie Ballentine was ordered to pay $100 per month for the support, maintenance and education of the child until March 10, 1949; to pay during the minority of the child all rent, taxes and costs of repairs to any permanent residence occupied by her and the child, and to make payments on the encumbrance on the residence now occupied by them and all payments required by any purchase price indebtedness on any future home in which they may reside. She was further ordered to establish a bank account for the child which would be subject to certain limitations and restrictions. Plaintiff was ordered to pay attorneys' fees in the sum of $15,810.

Plaintiff moved for a new trial. His motion was denied but the court modified its judgment and ordered plaintiff to pay $250 a month and defendant Marie Ballentine $100 a month for the support of the minor child throughout his minority and until further order of court. The attorneys' fees which plaintiff was ordered to pay were reduced to $11,900.

Both plaintiff and defendants have appealed from portions of the judgment as modified.

## PLAINTIFF'S APPEAL

Plaintiff contends that the trial court erred (1) in not finding and ruling, as a matter of law, that the agreement of October 30, 1945, was obtained by the fraud of defendant Marie Ballentine and that she repudiated the agreement in behalf of the child and herself, or at least in her own behalf, by (a) making unreasonable demands inconsistent with the terms and conditions of the contract, (b) causing a guardian of the estate of the child to be appointed for the purpose of prosecuting a claim against plaintiff for the support and maintenance of the child, (c) refusing plaintiff's tender of performance in March and April of 1947, and (d) cross-complaining under section 196a of the Civil Code; (2) in indirectly modifying the agreement of October 30, 1945, instead of setting it aside and relegating the defendants, or at least the mother, to an election between the contractual rights and the statutory rights under section 196a of the Civil Code; (3) in allocating

four-fifths of the benefits of the contract to the mother and only one-fifth to the child; (4) in failing to rule that plaintiff's obligation to support and maintain the infant is limited to the father's lifetime and (5) in the amount of counsel fees awarded.

In support of his contention that there was fraud in the execution of the contract of October 30, 1945, plaintiff asserts that Marie Ballentine made repeated demands upon him for support and maintenance for the child and herself; that as a result of her coercion and intimidation she obtained the contract; that she promised when it was signed she would make no further demands but that at that time she had the secret intention and reservation to make further demands on the part of the child which in turn would benefit her. The trial court, however, found in favor of defendant Marie Ballentine and against plaintiff upon the issue of fraud and specifically found that the parties dealt at arm's length in the negotiations preceding the execution of the contract and that both had advice of counsel; that plaintiff was not influenced nor imposed upon by any representations made to him by Marie Ballentine and there was no fraud, deceit, coercion or intimidation committed or exercised by her in the inducement or execution of the contract. These findings are supported by the evidence. According to the evidence the agreement was prepared by plaintiff's attorney and originally provided for payments to Miss Ballentine of $100 weekly. Plaintiff asked her to sign the agreement and she refused. Plaintiff had been paying her $1,000 a month. The agreement was then changed to provide for payments of $500 monthly until March 10, 1949, and $100 a week thereafter until March 10, 1965. Miss Ballentine also refused to sign this agreement but later agreed to and did sign it on October 30, 1945.

Any conflicts in the evidence are for the determination of the trial court and every substantial conflict must be resolved in favor of the finding. (*Buckhantz* v. *R. G. Hamilton & Co.,* 71 Cal.App.2d 777, 779 [163 P.2d 756]; *Estate of Pohlmann,* 89 Cal.App.2d 563, 568 [201 P.2d 446]; *Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176, 183 [195 P.2d 427].) The same is true of the question of credibility of the witnesses. (*Kircher* v. *Atchison, T. & S. F. Ry. Co., supra.*) Much of the evidence consists in the testimony of Marie Ballentine. Plaintiff suffered a heart attack and his physical condition was such that he could neither give his deposition nor appear at the trial.

It is plaintiff's contention that Miss Ballentine's secret intention not to keep her promise to make no further demands upon him is borne out by her testimony and her subsequent actions in having a guardian appointed for the child's estate and in making a demand upon him to set up a trust fund for the child. The testimony to which plaintiff adverts does not support his contention. Miss Ballentine testified that she told plaintiff she had no further claim on him; that the question of further demands for the child was not brought up. Furthermore, the court found that the parties did not consider negotiations for additional provisions for the minor to be inconsistent with the validity and continued existence of the contract. *Neilsen* v. *Neilsen,* 216 Cal. 150 [13 P.2d 715], and *Longway* v. *Newbery,* 13 Cal.2d 603 [91 P.2d 110], cited by plaintiff, are of no assistance to him. In the Neilsen case the findings of the trial court that the agreement was entered into by defendant without any intention of performing it was based on conflicting evidence and its finding was not disturbed. In the Longway case the court held that the evidence did not support the findings.

As to plaintiff's contention that defendant Marie Ballentine repudiated the contract, the court made specific findings adverse to plaintiff's contentions and since they are supported by the evidence they will not be disturbed by this court. Miss Ballentine testified that she never asserted that the provisions of the contract of October 30, 1945, were for her alone but she always assumed they were and that she would take care of the child; that she had frequently discussed with plaintiff, both before and after the birth of the child, the setting up of a trust fund for its education; that in the fall of 1946 she told plaintiff she had been offered a position in New York and wanted to take the child with her; defendant objected and stated if she insisted on taking a position in New York and taking the child with her he would stop her payments under the contract; she then sought legal advice with respect to her rights under the contract; during the course of her conferences with her attorneys in connection with its validity and effect the matter of setting up a trust fund for the child was discussed and at the suggestion of her attorneys a trust company was appointed guardian of the estate of the child. Discussions and negotiations were entered into in January and February, 1947, between Miss Ballentine's attorneys and plaintiff's attorney. Plaintiff continued to make his payments under the contract.

 Any negotiations for the establishment of a trust fund for the future support and care of the minor would not constitute a repudiation of the contract by defendant Ballentine on behalf of the child. The contract, although valid between the parties, had not been approved by the court and was therefore not binding upon the minor. (*Berry* v. *Chaplin,* 74 Cal. App.2d 652, 657 [169 P.2d 442].) At the time the contract was drawn and executed plaintiff had the advice of counsel and should have known that the rights of the child could not be limited by any contract which did not have the approval of the court. Manifestly, the minor was not compelled to make an election between his statutory rights and any rights which he might have under the contract.

 There is no allocation in the contract[2] as between defendant Marie Ballentine and the child of the payments plaintiff agreed to make. Nor is there any provision in the agreement for a reduction in the payments in the event of the death of either Miss Ballentine or the child. Plaintiff does not claim the contract is void for uncertainty for that

---

[2]THIS AGREEMENT made and entered into at Los Angeles, California this 30 day of October, 1945, between Marie Ballentine Moskovita, First Party and George G. DeSylva, Second Party,

WITNESSETH

WHEREAS First Party has made a claim on Second Party for the support and maintenance of herself and her child, Stephen William Moskovita believing she has a legal claim, and

WHEREAS Second Party does not believe that First Party has a legal claim, but nevertheless desires to effect a compromise and settlement thereof,

NOW THEREFORE, in consideration of the promises and agreement on the part of the parties hereto, IT IS HEREBY MUTUALLY UNDERSTOOD AND AGREED AS FOLLOWS:

I

Second Party shall pay First Party the sum of Six Thousand Dollars ($6,000.00) per year, in equal monthly installments beginning upon the execution of this agreement and continuing until Mar. 10, 1949, and thereafter the sum of $100.00 per week until Mar. 10, 1965, which payments are made for the support and maintenance of First Party and for the support, maintenance, care and education of Stephen William Moskovita.

II

Second Party agrees to transfer to First Party the house and lot known as No. 152 Glenroy Avenue, West Los Angeles, California, free and clear of encumbrance, except conditions, restrictions, reservations and rights of way of record, if any; said property is legally described as

Lot 17, Block 1 of Tract 10421, as per map recorded in Book 54, pages 3 and 4 of Maps, records of Los Angeles County;

and Second Party also agrees to transfer to First Party the furnishings of said house, and agrees to expend the sum of $1,000.00 for repairs on

or for any other reason but asserts that the court indirectly modified the agreement by allocating four fifths of the benefits to Miss Ballentine and one fifth to the child. Contrary to plaintiff's contentions the court did not make any allocation of the benefits of the contract, nor has the court modified the agreement. The court determined that the child requires $350 a month for support and maintenance "in addition to the other benefits accruing herein"; that it is reasonable and within plaintiff's ability to pay "in addition to any and all benefits which the child may receive from its mother or pursuant to the terms of the contract" for the support, maintenance and education of the child the sum of $250 a month during and throughout the minority of the minor and until further order of court; that defendant Marie Ballentine is able to pay $100 a month toward the support of the child. The court had jurisdiction and power under section 196a of the Civil Code to require both plaintiff and defendant to contribute to the child's support. The court came to the conclusion that any benefits accruing to the child under the contract were insufficient for his full support and therefore made an additional statutory award. Maintenance of the mother is a necessary part of support of the child. (*Berry* v. *Chaplin, supra,* p. 674.) The court in considering the needs of Miss Ballentine as the mother took into consideration the benefits accruing to her under the contract and determined that she would be able to contribute $100 a month toward the support of the child from the income which both of them received from it.

In the case of *Puckett* v. *Puckett,* 21 Cal.2d 833 [136 P.2d

---

said house and the further sum of $1,000.00 for repairs on the furniture now located in said house.

III

First Party agrees that Second Party may see Stephen William Moskovita at all reasonable times.

IV

First Party agrees to, and hereby does release Second Party from all claims, known or unknown, which she has or may have against him, his heirs or representatives.

V

This agreement shall inure to the benefit of and bind, as the case may be, the parties hereto, their heirs, executors and administrators.

In Witness Whereof the parties hereto have set their hands the day and year first above written.

Marie Ballentine Moskovita
—First Party

George G. DeSylva
—Second Party

1], plaintiff and defendant entered into a property settlement agreement whereby the defendant agreed to pay the plaintiff $250 a month for the support and maintenance of the plaintiff and the minor child of the parties. There was no allocation of the payments as between plaintiff and the minor child. Defendant subsequently sought to have the monthly allowance reduced because of his changed financial circumstances. The court stated that while parents may contract with each other with respect to the custody and support of their minor children, the latter are not bound by the contract and the parents cannot thereby abridge the power of the court in appropriate proceedings to provide for the support of the children by their parents. The court held that the amount specified in the contract could not be reduced because it was part of a property settlement and although the payments ordered to be made are not subject to reduction, they could be increased by the court if the child's welfare required it, without regard to what the liabilities of the parties and their rights *inter se* under the agreement might be. In the instant case the court was of the opinion that the minor's needs were $350 a month in addition to any benefits which he might receive under the contract.

Plaintiff next contends that defendant Marie Ballentine repudiated the contract in causing a guardian to be appointed of the estate of the child for the purpose of prosecuting a claim against him for the support and maintenance of the child; that if she did not repudiate the contract on behalf of the child she did so in her own behalf. The court found that the parties did not consider negotiations for additional provision for the child to be inconsistent with the validity and continued existence of the contract. The evidence indicates that any demands made by Miss Ballentine upon plaintiff after the execution of the contract were for the benefit of the child. The trial court found that she caused a petition to be filed for the appointment of a guardian of the estate of the minor and therein alleged that the minor had a claim. The appointment of a guardian in connection with the establishment of a trust fund for the child or for that matter even for the purpose of bringing an action under section 196a of the Civil Code would not therefore constitute a repudiation of the contract on the part of Miss Ballentine.

Plaintiff maintains that the refusal to accept his tender of the March and April checks constituted either a breach of the contract or an act of repudiation upon the part of Miss Ballentine. The checks in question were made payable jointly

to her and the trust company as guardian. She at first refused to accept the checks but later did accept them although she never cashed them. Plaintiff filed this action April 5, 1947. Under the terms of the contract plaintiff agreed to pay Miss Ballentine the sum of $6,000 a year in equal monthly installments. The purpose of the payments was for the support of Miss Ballentine and the child. There was, as has been heretofore pointed out, no allocation of the payments as between Miss Ballentine and the child. The contract called for the payment to be made to Miss Ballentine alone and her refusal to accept the checks when proffered in a form other than that required by the terms of the contract was justified since it was not a proper tender. Moreover, it would not constitute a repudiation upon the part of Miss Ballentine since her refusal was not of the payment but her objection was to the form of the payment which was not in conformity with the contract.

Plaintiff contends that by cross-complaining under section 196a of the Civil Code defendant Marie Ballentine repudiated the contract since she had specifically agreed to release plaintiff from all claims, known or unknown, which she had or might have against him. In support of this contention plaintiff cites *Schnurr* v. *Quinn*, 83 App.Div. 70 [82 N.Y.S. 468]. The case is not persuasive. In the Schnurr case the mother of the illegitimate child caused bastardy proceedings to be instituted against the child's alleged father while he was still complying with the terms of the agreement which he had entered into with her for the child's support. In the instant case action was instituted by plaintiff's filing a complaint for declaratory relief in which he contended the contract was no longer valid and asking a declaration of his rights under section 196a of the Civil Code.

It is plaintiff's contention that the court erred in ordering him to pay $250 a month ''during and throughout the minority of the said minor and until further order of the court''; that the statutory obligation of a father to support his illegitimate child terminates upon the father's death, citing *Myers* v. *Harrington*, 70 Cal.App. 680 [234 P. 412]. Under the common law the father of an illegitimate child was under no obligation to provide for its support and education and the liability of the father of a legitimate child to support his child terminated with his death. Both parties are in agreement, however, that the law is clear in this state that an order for

support of a legitimate child may survive the death of its father and continue as a charge against his estate. (*Estate of Smith,* 200 Cal. 654, 659 [254 P. 567]; *Newman* v. *Burwell,* 216 Cal. 608, 612 [15 P.2d 511].) The Legislature has by statute placed upon the father of an illegitimate child the same responsibility for its support as rests upon the father of a legitimate child (Civ. Code, § 196a) and that statute provides that in an action to enforce such obligation the court "shall have power to order and enforce performance thereof the same as under sections 137, 137.5, 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife." Thus, since the order for support of a legitimate child pursuant to section 137 et seq. of the Civil Code may survive the death of the father and continue as a charge against his estate, and since the court has the power to order and enforce performance of the obligation for support upon the part of the father of an illegitimate child in the same manner, there is no reason why the order under section 196a may not survive the death of the father and continue as a charge against his estate. The case of *Myers* v. *Harrington, supra,* is not contrary to this view. In that case suit was brought under section 196a of the Civil Code for the purpose of securing a decree providing for the maintenance of an illegitimate minor child out of the estate left by its putative father. Defendant's demurrer was sustained without leave to amend. There had previously been no decree ordering the father to support the child. The court approved the rule established in *Stone* v. *Bayley,* 75 Wash. 184 [134 P. 820, 48 L.R.A.N.S. 429], that "when a decree has been entered providing for maintenance during minority, it is a continuing one and does not abate simply by the death of the parent against whose estate such maintenance is made a charge." The court pointed out, however, that the remedies under section 140 of the Civil Code are attendant upon the prosecution of an action for divorce and the entry of final judgment therein; that an action for divorce does not survive the death of either party and in such event other provisions of the code must be relied upon whenever maintenance is sought for the minor child. The court stated: "Section 196a does not purport to reach out and charge any decedent's estate in its operation and effect. This is given by sections 138, 139 and 140 of the Civil Code, which are made applicable to the enforcement of section 196a, and, therefore, to the extent that they limit and circumscribe the power of the court, the power of the court coming under section 196a is

likewise limited and circumscribed. These sections, as we have seen, and by the authorities which we have cited, make the rights dependent upon and the enforcement of such rights dependent upon the entry of a decree of final divorce, and do not exist and cannot be enforced if, by the death of one of the parents, the divorce proceedings abate prior to the entry of judgment.'' The putative father having died prior to the institution of the proceedings under section 196a, the court found that the minor child had no cause of action against the administrator of his estate.

Finally, plaintiff asserts the trial court abused its discretion in awarding excessive counsel fees to defendants' attorneys. Plaintiff contends that since plaintiff conceded paternity and offered to pay a reasonable sum for the support of the minor child, the services rendered by counsel were for the most part for the benefit of defendant Marie Ballentine; that the services rendered on behalf of the minor child do not warrant the fees awarded, particularly in view of the fact that the work of counsel was made considerably lighter not only by the admissions of plaintiff but also by the production of records and tax returns; that the only issue defendants had to meet was how much should be allowed the child; that although considerable work was undertaken by counsel upon collateral proceedings and points they were unnecessary and without value to the child.

The trial court originally awarded counsel for defendants a total of $21,110, including sums paid pursuant to pendente lite orders in the amount of $5,300. Upon his motion for new trial plaintiff filed objections to the amount of counsel fees awarded with a detailed memorandum of facts in connection with those fees. Defendants filed a lengthy answer thereto. Thereupon the court, after reconsidering the matter, determined that a reasonable fee for all services rendered since the payment of the pendente lite orders was $11,990 and modified the award accordingly.

The value to be placed on the services rendered by counsel lies in the sound discretion of the trial court. There is room for a difference of opinion in the evaluation and while this court might have placed a different value on the services rendered, it will not substitute its opinion for that of the trial court unless as a matter of law the latter has abused its discretion. (*Berry* v. *Chaplin*, 74 Cal.App.2d 669, 672 [169 P.2d 453]; *Brockmiller* v. *Brockmiller*, 57 Cal.App.2d 623,

625 [135 P.2d 184].) In a legal sense that discretion may be said to be abused whenever in its exercise the court exceeds the bounds of reason, all the circumstances before it being considered. (*Makzoume* v. *Makzoume,* 50 Cal.App.2d 229, 231 [123 P.2d 72].)

The case of *Berry* v. *Chaplin, supra,* summarizes the major factors to be considered in determining what constitutes a reasonable compensation for an attorney, namely, the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded, the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. The difficulties in the instant case can scarcely be compared with those in the Berry case. In this case paternity is admitted whereas in the Berry case it was denied and furthermore that action appeared to be dead when counsel took charge of it. There is also a difference in both the age and experience of the attorneys in the two cases. Nevertheless, the record in this case is voluminous and although some of the collateral proceedings were undoubtedly unnecessary, the trial court was in a better position to evaluate the services than is this court and we cannot say that the fees awarded are so excessive as to constitute an abuse of discretion.

### DEFENDANTS' APPEAL

Defendants contend the court erred (1) in failing to require plaintiff to provide security for the payments ordered by the decree; (2) in failing to adjudge that plaintiff has acknowledged himself to be the father of the defendant minor child within the purposes contemplated by section 255 of the Probate Code; (3) in reducing the total counsel fees awarded to the attorneys for the infant, and (4) in ordering plaintiff to pay an unreasonably inadequate and insufficient amount for the support, maintenance and education of the minor child.

Defendants admit that under section 196a of the Civil Code the order for security is discretionary with the trial court. They assert, however, that the circumstances of this case require it and the refusal of the court to order plaintiff to provide security constituted an abuse of discretion. The particular circumstances which they maintain support their contention are (1) the fact that plaintiff is suffering from a

serious heart condition and that his life expectancy is uncertain, and (2) that Mrs. DeSylva testified all the property owned by plaintiff was in joint tenancy. Defendants do not argue that there is any justification for requiring security for compliance with the order during plaintiff's lifetime but they maintain that even though the order for support and maintenance will survive plaintiff's death, from a practical standpoint it will be of no benefit to the child since upon his death title to all the property will vest in his wife and there will be virtually no estate from which the child could obtain support.

The purpose in requiring security is to ensure compliance with the order. Both parties are in agreement that there is neither necessity nor justification for an order requiring plaintiff to provide security for compliance during his lifetime. He has voluntarily placed himself within the jurisdiction of the court, has acknowledged paternity and the obligation for support, and has manifested great affection for his child. There appears to be no reason to assume that he will fail to make adequate provision for the child upon his death or to speculate upon the possibility that he may not leave an estate. The order, which will survive plaintiff's death, gives the minor child adequate protection and we find no abuse of discretion in failing to require plaintiff to provide security because he might not leave an estate upon his death.

Defendants maintain there should have been an adjudication by the trial court that plaintiff had acknowledged himself to be the father of the minor child within the purview of section 255 of the Probate Code. They concede there has been no full legitimation but argue that the court should have found that plaintiff acknowledged the child as his thereby giving it under the provisions of section 255 the rights of succession to which it would not be entitled in the absence thereof. Defendants argue that in a declaratory action relief is properly granted where a dispute exists respecting rights or obligations which will come into being at a future time when an anticipated legal situation will have developed. Conceding this to be the law, that issue was not raised by the pleadings and there was, therefore, no error.

Defendants contend that the amount awarded the minor child for his support and education is so inadequate as to constitute an abuse of discretion. In support of their contention they cite the rule laid down in *Kyne* v. *Kyne,* 70 Cal.App.2d 80 [160 P.2d 910], and *Berry* v. *Chaplin,* 74 Cal.

App.2d 669 [169 P.2d 453], that in making an order for the support and education of an illegitimate child the court should consider the needs of the child and the financial ability of the father; that the father's duty to support the child does not end with the furnishing of mere necessities if he is able to afford more.

Both the mother and the father of an illegitimate child are obligated to give him support and education and in addition to the financial ability of the parents consideration must be given to the needs of the child. It cannot be seriously argued that the sum of $350 a month does not furnish more than mere necessities and while there is no doubt that plaintiff has the financial ability to pay a sum far in excess of that which he has been ordered to pay, the amount awarded appears to be adequate for a child of tender years and clearly within the bounds of reason. Plaintiff furnished a home for defendants which Miss Ballentine sold for $55,000. From the proceeds she purchased another home for $14,750, subject to an encumbrance of about $5,200. According to the record after the sale of the house she had in her possession cash in the amount of $42,909. Out of this sum she spent about $15,000 to $18,000 in renovating and decorating the second house and $16,000 for clothes and jewels for herself. She spent additional amounts for an automobile and current expenses with the result that at the time of trial she had but $2,000 remaining out of the proceeds of the sale of the first home. From the extravagant manner in which Miss Ballentine has used the resources which she had, the natural conclusion is that the reason she feels the sum awarded for child support is not adequate is because it will not permit her to live in the luxury to which she has accustomed herself. Her obligation to her child is equal with that of plaintiff and although support of the child necessarily includes support for the mother, there is no reason why under the guise of support for his child plaintiff should be required to furnish sufficient funds for the mother to indulge her extravagant whims.

Finally defendants argue that while the trial court in fixing counsel fees did not exceed the upper limit of its discretion it did abuse its discretion when it reduced the fees which it had previously determined were reasonable. The trial court in evaluating the services of counsel took into consideration that they represented both defendant Marie Ballentine and the child and that the greater portion of their services were rendered for the benefit of Miss Ballentine; that many of

the collateral matters undertaken by them were unnecessary; that their burden was lightened considerably by plaintiff's admission of paternity, his stipulation that he was worth in excess of $500,000 and would be able to comply with any reasonable order of the court. Considering these factors together with all others which must be taken into account and the wide discretion in the trial court, we find no abuse of discretion in the amount of fees awarded to counsel for the minor child.

Judgment affirmed.

Moore, P. J., concurred and McComb, J., dissented.

A petition for a rehearing was denied April 3, 1950 McComb, J., voted for a rehearing. Plaintiff and appellant's petition for a hearing by the Supreme Court was denied May 15, 1950.