[Civ. Nos. 26722, 26828, 26829. Second Dist.,
Div. One. June 25, 1963.]

JANE ANNE CREVOLIN, Plaintiff and Respondent, v.
ANDREW J. CREVOLIN, Defendant and Appellant.

(Three Appeals.)

James J. McCarthy, J. W. Erlich, Nichols, Stead, Boileau & Lamb, Donald P. Nichols and Robert Firth for Defendant and Appellant.

Ball, Hunt & Hart, Joseph A. Ball, Ward, Ryan, Heyler & Traxler, G. Bentley Ryan and Sidney Traxler for Plaintiff and Respondent.

WOOD, P. J.—There are three appeals herein by defendant Andrew J. Crevolin.

Mrs. Jane Anne Crevolin commenced a divorce action and obtained a preliminary order that defendant Mr. Crevolin pay $10,000 on account of attorneys' fees, and $10,000 for costs and expenses. The interlocutory decree of divorce, obtained by her, reserved jurisdiction to determine the additional amounts of attorneys' fees, costs, and expenses to be awarded on her behalf. Thereafter, the court awarded additional amounts as follows: $115,000 as attorneys' fees; $4,695.26 as costs; and $12,531.94 for auditing services. Defendant appeals from the judgment, awarding those amounts.

As a result of that appeal, plaintiff obtained an order that defendant pay, to her attorneys, $3,000 as fees and $500 as costs on the appeal from that judgment. Defendant appeals therefrom.

Plaintiff filed in the office of Recorder of Los Angeles County an abstract of the judgment in the divorce action. Defendant made a motion for an order requiring the recorder to expunge the abstract from his records. Defendant appeals from the judgment denying his motion.

### First Appeal—No. 26722

Appellant contends that the award of $125,000 as attorneys' fees is unreasonable, grossly excessive, and there was no showing that it was necessary for him to pay her attorneys' fees or costs; and that much of the time spent by her attorneys in preparing the case was unnecessary.

Plaintiff first consulted Mr. G. Bentley Ryan, as counsel, in the early part of 1961 regarding a divorce, and thereafter and prior to filing the divorce action conferred with him many times. The divorce action, alleging extreme cruelty, was filed May 26, 1961. An order to show cause relative to alimony pendente lite, attorneys' fees, and costs was obtained. Several subpoenas duces tecum were issued and served in connection with that order. Preparation for the hearing on the order included investigation and study regarding community property, agreements between the parties, tax returns, and commingling of funds. As a result of the hearing which proceeded for one day, it was ordered, among other things, that defendant pay $2,000 a month as alimony, $10,000 on account

of attorneys' fees, and $10,000 as costs; that defendant make available to plaintiff's attorneys the books and records relating to property acquired during the marriage.

In preparing for trial, plaintiff's attorneys submitted several special interrogatories to defendant, regarding descriptions of and title to real and personal property, including securities and bank accounts. In order to obtain answers to the interrogatories, plaintiff's attorneys made many telephone calls and wrote many letters. They took defendant's deposition, consisting of 357 pages. They served notices for taking depositions of 17 persons, who were custodians of records of various banks or companies with which defendant had had financial transactions or in which he owned interests. Several of the depositions were taken and, in lieu of taking the other proposed depositions, the attorneys accepted written statements regarding the information sought. Some of the exhibits attached to the depositions consisted of many pages of balance sheets or other financial information. Defendant's attorneys took plaintiff's deposition, consisting of 150 pages. Plaintiff's attorneys held numerous conferences with appraisers whom they employed to appraise 19 parcels of real property which were located in four counties in California and in one county in Nevada. They also held numerous conferences with a petroleum engineer whom they employed to appraise mineral interests of the parties in the Wilmington oil field, and they held numerous conferences with an appraiser whom they employed to appraise horses owned by the parties. Over a period of approximately seven months, the attorneys conferred many times with the auditor whom they employed to examine the financial records of the parties—and during the final week of preparing for trial, the auditor was in the attorneys' office most of the time.

The parties married in September 1946. Her minor son by a former marriage was adopted by defendant. His financial statement of May 1945 showed that his net assets amounted to $283,000. At the time of the marriage his net financial worth was approximately $296,000 (according to computations made by plaintiff's auditor). After the marriage they began a business of owning and operating a stable of race horses. It was a successful business, and in 1954 one of their horses won the Kentucky Derby. They sold that horse and another horse for $900,000. About 1955 the parties began to invest in oil companies, real property, and corporation stock,

with the result that they made very substantial capital gains. Also, they were successful in owning and operating ranches. They became owners of large interests in water companies in the San Dimas area. Plaintiff participated in some of the business activities, particularly the operation of the stable and the ranches.

According to computations of the auditor, the net worth of the community property (exclusive of plaintiff's separate property of the approximate value of $150,000) was, as of December 31, 1961, approximately $4,500,000. Also, according to computations of the auditor, based upon the federal income tax reports of the parties for 1959 and 1960, the net cash income of the parties in 1959, after payment of income taxes, was approximately $262,000; and such net income in 1960 was approximately $183,000. The computations of the auditor, referred to above, were received in evidence herein. It is also to be noted that a financial statement of defendant, filed by him as an exhibit at the hearing of an order to show cause in June 1961, showed that his net worth as of December 31, 1960, was $1,770,064.76.

In the divorce action, it was the contention of defendant that his financial worth at the time of marriage was about $1,000,000, and that the increase of his financial worth was due primarily to the increase in the value of his separate property. In his deposition he asserted that the community property was not worth more than $75,000.

The attorneys for the parties carried on negotiations for several months trying to make a property settlement agreement. In June 1961 the defendant made an offer of settlement which provided (in principal part) that he would pay $20,000 a year for 10 years or until her remarriage, and would transfer to her a half interest in their Vernon warehouse (appraised at $155,000). In July 1961 he made an offer which (in principal part) was that he would transfer the warehouse to her and pay $27,000 a year until her death or remarriage. In August 1961 he made an offer which (in principal part) was that he would pay $33,000 a year until her remarriage, transfer a half interest in the warehouse, and pay $100,000. Another offer made in September, was to the general effect that he would pay $250,000. About February 12, 1962, he offered to pay approximately $800,000.

The case came on for trial on February 19, 1962. After further negotiations on that day and the following day, they

made a property settlement agreement whereby she received corporation stock, real property, and a secured promissory note, of a market value of $1,300,000. She agreed to make no claim for alimony. He received property of the approximate value of $3,500,000.

The defendant presented no opposition to granting a decree of divorce to her. The divorce case was heard as a default, and plaintiff obtained an interlocutory decree, wherein jurisdiction was reserved to determine the additional amounts of attorneys' fees, costs, and expenses to be awarded.

The hearing regarding such additional amounts was had on February 26 and March 1, and 2, 1962. The entire file in the case was before the court. It was stipulated that the testimony of Mr. Ryan, Mr. Traxler, and other attorneys associated with them, regarding legal services rendered, was set forth in a written document, marked Exhibit 1. That document consisted of a detailed statement of the legal services rendered by plaintiff's attorneys. The services so referred to in that document included the services hereinabove mentioned. There was testimony that plaintiff's attorneys devoted more than 740 hours to this case (up to this hearing regarding fees and costs) ; there were hundreds of telephone calls, more than 210 pages of correspondence, and the office files consisted of five large folders. Many depositions were taken. The office overhead-expenses of plaintiff's attorneys amounted to several thousand dollars a month.

Five attorneys, who were well qualified to give opinions as to the reasonable value of legal services, were called as witnesses by plaintiff. They testified that they had read Exhibit 1 (the document embodying statements of legal services rendered). In answer to a proper hypothetical question, based upon services rendered as shown by Exhibit 1, they stated their opinions as to the reasonable value of such services. Those opinions ranged from $125,000 to $200,000.

The record shows that the litigation involved many intricate and difficult legal questions, particularly with regard to the amount and character of the property—whether it was community or separate property. The accounting schedules and other testimony of the auditor indicate the complicated financial transactions of defendant during the 16 years of marriage. There were many pleadings, briefs, court appearances, conferences, letters and telephone calls. The amount involved was large, and the result obtained was more than seven times

the amount of the first offer of settlement. Mr. Ryan, Mr. Traxler, and other members of the law firm representing plaintiff, were experienced attorneys of high professional standing and qualifications. They had had experience in other litigation involving large amounts and had received large fees for their services therein.

The amount to be allowed as the reasonable value of legal services rendered is a matter within the sound discretion of the trial court, and will not be set aside by a reviewing court unless there has been an abuse of discretion. (*Primm v. Primm*, 46 Cal.2d 690 [299 P.2d 231]; *Pope v. Pope*, 107 Cal. App.2d 537, 539 [237 P.2d 312]; *State of California v. Westover Co.*, 140 Cal.App.2d 447, 449 [295 P.2d 96]; *County of Riverside v. Brown*, 30 Cal.App.2d 747, 749 [87 P.2d 60]; *De Sylva v. Ballentine*, 96 Cal.App.2d 503, 515 [215 P.2d 780].) "In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered. . . . The burden is on the party complaining of the order to establish an abuse of discretion, and unless a clear case of abuse is shown . . . an appellate court will not substitute its opinion and thereby divest the trial court of its discretionary power." (*Berry v. Chaplin*, 74 Cal.App.2d 669, 672-673 [169 P.2d 453].) In the present case, the testimony of the five expert witnesses was to the effect that the value of the services ranged from $125,000 to $200,000. The opinions of those witnesses was evidence in support of the award. (See *Matthiesen v. Smith*, 16 Cal.App.2d 479, 481-482 [60 P.2d 873].) The evidence was sufficient to support the award of attorneys' fees. The trial court did not abuse its discretion in awarding said amount.

Appellant contends further that the court erred in awarding attorneys' fees, since there was no showing of necessity for making an award therefor. He argues that since she had received, under the property settlement, property of the approximate value of $1,300,000, and since she also had separate property of the value of approximately $250,000 (approximately $150,000, according to evidence), there was no necessity for making an award for attorneys' fees. The income from her separate property was $6,000 a year. In *Sigesmund v. Sigesmund*, 115 Cal.App.2d 628 [252 P.2d 713], the husband contended on appeal that the court erred in requiring him to pay $5,000 additional as attorneys' fees, since the wife had separate property of the value of

$100,000 and there was no necessity for making the award. In that case the husband's financial worth was about $400,000. The income from the wife's property therein was about $400 a month. The court said, at page 632: "To compel her to pay this additional attorneys' fee would make an inroad on her capital, from the earnings of which she must support herself. However, 'the law does not require a wife to have recourse to her own resources first, to the impairment of the capital of her own separate estate.' . . . Under such circumstances, therefore, it was not an abuse of discretion to require the plaintiff [husband] rather than the defendant to pay the additional attorneys' fee." In *Primm* v. *Primm, 46 Cal.2d 690, 696* [299 P.2d 231], it was said: "It is likewise settled that the trial court is under no duty to require the wife to exhaust her separate capital before ordering the husband to pay her costs and attorney's fees on appeal from a decree in a divorce action." In the present case there was evidence to the effect that the plaintiff, in making the settlement, agreed to accept the equity in the Vernon warehouse at an appraised value of $125,000, when in fact she then owned one-half of that property. There was a statement of Mr. Ryan (as a witness herein) to the effect that in the negotiations for a settlement the plaintiff indicated that her acceptance of that property at that value would amount to a contribution by her of half of the $125,000 fee. It also appears that during the negotiations for settlement, the defendant did not assert that plaintiff should pay her attorneys' fees. The court did not err in requiring defendant to pay attorneys' fees.

Appellant also asserts that since the plaintiff did not file a cost bill, as required by section 1033 of the Code of Civil Procedure, the additional costs in the amount of $4,-695.26 should not have been allowed. Said section provides that a party in whose favor the judgment is ordered and who claims his costs must serve upon the adverse party within a certain time a memorandum of his costs. In the present case, no memorandum of costs was served or filed. Under section 137.3 of the Civil Code the court may award ". . . such amount as may be reasonably necessary for the cost of maintaining or defending the action. . . ." Also, under that section, ". . . from time to time and before entry of judgment, the court may augment or modify the original award, if any, for costs. . . ." Plaintiff herein was not required to file a cost bill.

Appellant asserts further that many of the items

claimed as costs were unnecessary; for example (as he asserts) no investigation of defendant's conduct after August was necessary because a stipulation had been made that he would not oppose the granting of a divorce decree to her. Whether or not such investigation was necessary was a question of fact. ▮ There was testimony by Mr. Traxler to the effect that in his opinion the investigation was necessary. The court did not err in allowing additional costs in the amount of $4,695.26. (There is no discussion in appellant's briefs regarding the allowance of $12,531.94 as auditor's fees.)

### SECOND APPEAL—No. 26828

▮ Appellant contends that the court erred in ordering that he pay, to plaintiff's attorneys, $3,000 as fees and $500 as costs on the appeal by defendant from the first judgment (the supplement to the interlocutory judgment, wherein $115,000 additional was awarded as fees). Appellant argues to the effect that the first judgment involved herein (the supplement to the interlocutory judgment—awarding fees to the attorneys) was solely in favor of the attorneys and therefore the plaintiff (wife) could not be obligated in any way to pay for the services or costs of those attorneys who are defending on appeal the judgment which was solely in their favor. In other words, appellant's argument is to the effect that since the interlocutory judgment settling the community property rights has become final, the plaintiff has no interest in the result of the appeal which pertains only to the fees awarded to her attorneys. A similar contention was made in *Kyne* v. *Kyne*, 74 Cal.App.2d 563 [169 P.2d 272], and the ruling was contrary to such contention. (See also *Howard* v. *Howard*, 141 Cal.App.2d 233 [296 P.2d 592].) In the present case, the evidence was sufficient to support the order awarding attorneys' fees and costs on appeal.

### THIRD APPEAL—No. 26829

▮ Appellant contends further that the court erred in denying his motion for an order requiring the Recorder of Los Angeles County to expunge an abstract of a judgment from his records. He argues that the judgment creditors in the present case are amply secured in the collection of the judgment because a bond on appeal in the amount of $201,000 has been filed, and therefore the court should have made an order expunging the abstract from the records. Section 674 of the Code of Civil Procedure provides that an abstract of a judgment may be recorded and it becomes a lien upon the real

property of the judgment debtor, and the lien continues unless the enforcement of the judgment is stayed on appeal by the execution of a sufficient undertaking, in which case the lien of the judgment ceases. There is no reporter's transcript with respect to this appeal. The record does not show when the abstract was filed. Appellant's notice of motion, filed in the trial court, states that the abstract was filed on May 16, 1962. His notice of appeal from the judgment regarding attorneys' fees and costs was filed on May 15, 1962. The record does not show when the bond on appeal was filed. (Plaintiff-respondent states that it was filed on June 1, 1962.)

In any event, it seems clear that plaintiff had a right to record an abstract prior to the filing of an appeal bond. Said section 674 does provide that the lien of a recorded abstract ceases when the enforcement of the judgment is stayed on appeal. It does not appear, however, that there is any statutory provision authorizing the court to grant a motion compelling a recorder to expunge from his records an abstract which has been properly recorded. In *Moniz* v. *Moniz*, 142 Cal.App.2d 641 [299 P.2d 329], a husband made a motion to "cancel certain abstracts" regarding payments for child support. The husband therein asserted that he had paid in full all amounts to be paid. In denying the motion, the court said: "However, it does not seem that there was error on the part of the trial court in declining to make an order cancelling the abstract, an order for which there does not seem to be precedent, although it is conceivably a valid procedure." In the present case, the court did not err in denying the motion.

The judgments, from which the three appeals have been taken, are affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1963.