[Civ. No. 28238. Second Dist., Div. Two. Feb. 11, 1965.]

CLARE M. AVNET, Plaintiff and Respondent, v. BANK OF AMERICA, as Special Administrator, etc., Defendant and Appellant.

Joseph L. Wyatt, Jr., Belcher, Henzie, & Biegenzahn, Schoichet & Rifkind and Nathan L. Schoichet for Defendant and Appellant.

Mindlin, Levy & Gluecksman, Pacht, Ross, Warne, Bernhard & Sears and J. D. Gluecksman for Plaintiff and Respondent.

FOX, J.[*]—This is an appeal by the defendant-husband[1] from an order pendente lite which awarded the plaintiff-wife temporary alimony and attorneys' fees. The husband challenges the power of the court to award any support or attorneys' fees to the wife pendente lite, and also challenges the necessity of any such awards, and the amounts thereof.

The primary basis of the husband's challenge to the power of the court to make any award in either of these respects is that the wife's Alabama divorce from her former husband was void and that, therefore, his marriage to the plaintiff is invalid.

At the conclusion of the hearing on an order to show cause the court found that (1) plaintiff and defendant are husband and wife; (2) defendant is estopped from attacking the validity of the Alabama decree between plaintiff and her former husband Robert M. Heininger; and (3) defendant is estopped from asserting his claim that his marriage to plaintiff is invalid.

In support of these findings the wife produced a divorce decree by an Alabama court from her prior husband which shows on its face that the court had before it the "answer and waiver of respondent" (wife's first husband), and based thereon "the court is of the opinion and finding that the court has jurisdiction of the parties and the cause of action," and thereupon granted wife a divorce with the sole restriction

---

[*] Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] In July 1964, some nine months after the order here appealed from was made, and after all the briefs on appeal had been filed, defendant passed away. Bank of America National Trust and Savings Association was appointed special administrator of decedent's estate with general powers. Upon application to the probate court the special administrator was instructed "to continue the appeal of this action in place of said decedent on the issues of alimony and attorneys' fees only." The special administrator has been substituted as defendant and appellant.

For convenience and in the interest of clarity reference herein to defendant refers to Robert H. Avnet, the original defendant—now deceased.

that neither party could remarry within 60 days after the date of the divorce, which was November 22, 1954. Plaintiff also produced the marriage certificate between her and defendant which showed that they were married on January 30, 1955, the marriage license showing on its face that wife obtained an Alabama divorce from her former husband on November 22, 1954. The parties lived together as husband and wife until August 7, 1963. It was further shown that plaintiff and defendant filed joint income tax returns; that they joined a religious Temple as husband and wife; that they showed on their passport applications that they were husband and wife; that on S.E.C. statements it appeared that defendant was married to plaintiff; that they traveled together and entertained together; that they purchased property as husband and wife; that they made wills in which they referred to each other as husband and wife; and that a child was born to this union October 8, 1957. In addition, the court had before it a file of the Superior Court of Los Angeles County which revealed the adoption by plaintiff and defendant of a minor child in July 1957. This record contained the allegation and finding based thereon that plaintiff and defendant herein were, in fact, husband and wife. It was essentially on this evidence that the court found that plaintiff and defendant are husband and wife.

With respect to the Alabama decree, plaintiff testified that prior to her taking any steps whatever toward filing a divorce action in Alabama, Avnet told plaintiff that he wanted her to go to her attorney and find out where she "could go and secure the fastest divorce." She thereupon consulted her attorney who advised that she file her suit in Alabama and arranged counsel for her there. She further testified to the effect that defendant knew that she went to Alabama to get a divorce, that defendant offered to pay for the same but that she refused the offer, that defendant did pay her transportation to Alabama from New York and for her return ticket, that he knew she got a divorce in Alabama, that he talked to her on the telephone while she was there, that he took her to the airport to go to Alabama for the purpose of securing a divorce, that he picked her up at the railroad station in New York upon her return, that he read and discussed the divorce decree with her, and that on January 30, 1955, after the expiration of the 60-day period required by the Alabama decree, defendant married her in a public ceremony which was attended by some 300 guests, and they had lived together

as husband and wife for approximately eight and one-half years.

Defendant made an elaborate offer of proof consisting of some 30 items in which he sought to prove, *inter alia,* that neither plaintiff nor her former husband resided in Alabama at the time of the decree in question, that they were guilty of fraud upon the Alabama court, that plaintiff was only in Alabama one night, that she did not actually appear in court, that the Alabama court acquired no jurisdiction of either the res or the parties, that plaintiff's divorce from her former husband was, therefore, void, and her subsequent marriage to him was invalid. And, as a consequence, the court had no jurisdiction to make any award pendente lite for either the plaintiff's support or counsel fees for her attorneys.

The court sustained the wife's objections to the husband's offer of proof, except for the items dealing with defendant's knowledge of, assistance to, and cooperation with plaintiff in procuring the Alabama decree and his knowledge of its terms, on the theory that he was estopped: (1) to challenge the validity of plaintiff's Alabama divorce decree; and (2) to claim that his subsequent marriage to plaintiff was invalid.

In making its rulings, findings and order the trial court relied upon *Dietrich* v. *Dietrich,* 41 Cal.2d 497 [261 P.2d 269]. In that case the Supreme Court adopted and applied these principles: (page 504) " ' ". . . Where an actual marital relation has been admitted or shown, and its existence in law is sought to be avoided by some fact set up by the husband, and it devolves upon him to show that fact, there alimony will be granted until that fact is shown; for the relation actually exists upon which the right to alimony depends, and the object of the litigation is to annul that actual relation by showing some other fact, the existence of which is denied. It may be said, too, that for the purposes of an application for temporary alimony there will not be need that the fact of marriage be so conclusively established as for the purpose of permanent alimony, or any other ultimate purpose of the action. It is for the interest of society and in aid of public policy that, where the married relation has been in fact assumed . . . and where it is averred by the putative wife and denied by the alleged husband, if she makes a reasonable plain case of its existence, she should be furnished with means of temporary support and of conducting the suit until the truth or falsehood of her allegations can be ascertained by

the proofs formally taken in the case." ' (See, also, 35 Am. Jur. 226, 227, § 70.)

"Applying the above stated principles, which we adopt, to the present case, since it appears that there was a ceremony of marriage coupled with an actual and bona fide assumption of marital relations, and considering the character of the attack on the validity of the marriage, it is obvious that the exclusionary ruling was proper and may be sustained at this stage of the proceedings on this ground alone."

In sustaining the trial court's exclusion (in *Dietrich* v. *Dietrich*) of the husband's proffered evidence to show the invalidity of Carol's Nevada divorce decree, the court further held: "There is, however, another and more fundamental ground which not only is controlling at this stage of the proceedings but presumptively will be controlling on the trial as well. On this record it is immediately obvious that the very evidence offered to show the invalidity of the ceremonial marriage was properly excluded because that same evidence shows that Noah is estopped to assert the claimed invalidity of the Nevada divorce. With full kowledge of the circumstances under which that divorce was obtained, and in reliance on such divorce, Noah went through a marriage ceremony and lived with Carol as her husband for many years. The public policy of this state, in the circumstnces of this case, as in those considered in *Rediker* v. *Rediker* (1950) 35 Cal.2d 796, 808 [221 P.2d 1, 20 A.L.R.2d 1152], requires recognition of the second marriage rather than the 'dubious attempt to resurrect the original' marriage. (See, also, *Watson* v. *Watson* (1952) 39 Cal.2d 305, 307 [246 P.2d 19].)"

Initially, it will be observed that the procedural posture of *Dietrich* and the instant case is identical—an appeal from an order pendente lite for support and attorneys' fees on account. The issues raised on the two appeals are the same. The factual pictures, though naturally differing in some particulars, are much the same. And the legal principles declared and applied in the one are apposite in the other.

It is important to bear in mind that, as stated in *Dietrich* (page 504): " . . . for the purposes of an application for temporary alimony there will not be need that the fact of marriage be so conclusively established as for the purpose of permanent alimony, . . ." For such purpose "the marriage is proved by a preponderance of the evidence" (*Carbone* v. *Superior Court*, 18 Cal.2d 768, 771-772 [117 P.2d 872, 136 A.L.R. 1260], or as said in *Dietrich* (page 504) if the

wife ''makes a reasonable plain case of its [the marriage's] existence, . . .'' ■ Here, the evidence shows that the application for a marriage license revealed that plaintiff had secured a divorce on November 22, 1954, in Alabama from her former spouse which, however, contained a provision that neither of the parties would be eligible to remarry for a period of 60 days thereafter, that the marriage certificate disclosed that plaintiff and defendant were married on January 30, 1955, which was more than sixty days after the Alabama divorce decree. The evidence further shows that plaintiff and defendant thereafter for a period of eight and a half years lived together as husband and wife, that in joining an established religious organization they represented themselves to be husband and wife, that they made the same representation to the government, that they carried on business and acquired property on that basis, that growing out of that relationship was the birth of a child, and that upon the representation to the State of California that they were husband and wife, (and a finding by the Superior Court of Los Angeles County that such was the fact) they were permitted to adopt a child. Certainly this showing constitutes substantial evidence that they were husband and wife and makes a reasonably plain case of the existence of the marriage, and adequately supports the finding for the purpose of this pendente lite order that plaintiff and defendant are husband and wife.

*Dietrich* is particularly apposite with respect to the court's ruling excluding the evidence in defendant's offer of proof and the findings *re* estoppel. As was there stated (page 505) : ''. . . it is immediately obvious that the very evidence offered to show the invalidity of the ceremonial marriage was properly excluded because that same evidence shows that Noah is estopped to assert the claimed invalidity of the Nevada divorce. With full knowledge of the circumstances under which that divorce was obtained, and in reliance on such divorce, Noah went through a marriage ceremony and lived with Carol as her husband for many years.''

■ In the instant case defendant told plaintiff to find out from her attorney where she could go and secure the fastest divorce. He assisted in getting her on her way to Alabama for the purpose of getting a quick divorce, talked to her while she was there, knew that she was in Alabama only a brief period, read and discussed the decree with plaintiff upon her return, knew that she could not remarry for a period of 60 days after the divorce was granted and complied with

that restriction. "With full knowledge of the circumstances under which that divorce was obtained, and in reliance on such divorce," (*Dietrich* v. *Dietrich*, page 505) defendant went through a marriage ceremony and lived with plaintiff as husband and wife for many years, as in *Dietrich*, and represented to his religious organization, the federal government in numerous instances that he and plaintiff were husband and wife, and made like representation to the superior court of this state and thereby induced said court to find that he and plaintiff were husband and wife and eligible to adopt a child and thus were permitted to adopt a child here. To permit defendant to repudiate all that had gone on for eight and one-half years would be most unfair to plaintiff and their two children, and detrimental to society. The trial court was abundantly justified in invoking the doctrine of estoppel against defendant's attack upon the wife's Alabama divorce decree and against his assertion that their marriage was invalid. The offered evidence was therefore properly excluded. (*Dietrich* v. *Dietrich, supra.*)

 Defendant argues that he did not have a fair hearing on the order to show cause in that he did not have a full opportunity to establish the invalidity of plaintiff's divorce and his subsequent marriage to her. In making this argument he misconceives the scope of this hearing and the extent of the showing that plaintiff must make in order to support a pendente lite order for support and attorneys' fees. These issues ordinarily are not to be determined with finality at this hearing. As previously noted the court pointed out in *Dietrich* that the fact of marriage on an application for temporary support need not be as conclusively established as is necessary for the purpose of permanent alimony. It is at the trial of the case on the merits that the issue as to the validity of the marriage is to be ultimately determined.

The hearing on this order to show cause lasted some four days. The reporter's transcript covers 485 pages. Examination of the record clearly indicates that defendant was given a fair hearing and a full opportunity to explore his position, bearing in mind its procedural posture and the principles announced in *Dietrich* and other similar cases.

The court granted plaintiff pendente lite support in the amount of $3,000 per month and attorneys' fees of $25,000 on account, the balance, if any, to be fixed at time of trial.[2]

---

[2]At virtually the outset of the trial defendant agreed that temporary custody of the children should remain with the mother. The court ordered

Counsel made a showing that they had put in 537½ hours on this case. They stated their minimum fees for contested divorce cases was $50 per hour.

Plaintiff had entered into a letter agreement with her counsel to the effect that they would petition the court for an award of fees to be paid by the husband; that if the amount of the fees paid by the husband was less than reasonable compensation for the time spent and services rendered, plaintiff would pay them any balance or difference.

Defendant argues that it was "an abuse of discretion" to award attorneys' fees in view of the above agreement. He cites and relies on *Mudd* v. *Mudd*, 98 Cal. 320 [33 P. 114]; *Sharon* v. *Sharon*, 75 Cal. 1 [16 P. 345]; and *White* v. *White*, 86 Cal. 212 [24 P. 1030]. In the *Mudd* case counsel agreed to represent the wife without charge. *Sharon* and *White* were contingent fee cases. It is immediately apparent that defendant's reliance on these cases in support of his thesis is misplaced. Here the attorneys for the wife were simply attempting to protect themselves in the event the court awarded an amount that they and their client considered less than the reasonable value of their time and services. The agreement could not possibly make it an abuse of discretion on the part of the trial court to award plaintiff reasonable attorneys' fees, provided such an award was in all other respects proper.

We find no merit in defendant's argument that the court erred in awarding plaintiff attorneys' fees because she failed to show she was "innocent of fraud." He relies on section 87, Civil Code[3] and *Middlecoff* v. *Middlecoff*, 160 Cal. App.2d 22 [324 P.2d 660]. The simple answer to this argument is that the section expressly refers to "annulment cases." Plaintiff's suit here is for *divorce*. Obviously, section 87 has no application whatever. *Middlecoff* on which defendant

---

defendant to pay $400 per month for the support of each child. Defendant does not challenge the right of the trial court to have made a reasonable award for attorneys' fees pendente lite in connection with the aspect of the case which relates to child custody and child support. Defendant does not appear to challenge on this appeal the amount awarded for child support. The probate court on a petition by the guardian ad litem for the children instructed the guardian not to participate in the appeal from the pendente lite order now before us.

[3]Section 87, Civil Code, reads: "The court shall have power to grant attorney fees and costs as provided by Section 137 in those *annulment* cases in which the party applying for such attorney's fees and costs shall, upon hearing, be found to be innocent of fraud or wrongdoing in inducing or entering into the marriage, and free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage sought to be annulled. [Italics added.]

principally relies is an annulment case, and is therefore of no assistance.

■ Defendant attacks the awards for support pendente lite and for attorneys' fees on two grounds: (1) that no showing of "necessity" therefor was made by the wife; and (2) the awards were excessive and therefore constituted an abuse of discretion.

In order to justify these orders it was, of course, incumbent upon the wife to show her needs and the husband's ability to pay. (Civ. Code, § 137.2.) ■ As pointed out in *Whelan* v. *Whelan,* 87 Cal.App.2d 690, 692 [197 P.2d 361]: "The purposes of allowances to a wife for alimony pendente lite, counsel fees and court costs are to enable her to live in her accustomed manner pending the disposition of the action and to provide her with the necessary funds for attorney's fees and costs to properly present her case." However, "She is not required to first impair the capital of her separate estate." (*Id.*) In *Howard* v. *Howard,* 141 Cal.App.2d 233, 237 [296 P.2d 592], this court stated: "The wife is not required to expend her principal in litigating divorce matters with her husband." The propriety of the allowance for these purposes rests in the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. (*Primm* v. *Primm,* 46 Cal.2d 690, 696 [299 P.2d 231]; *Sigesmund* v. *Sigesmund,* 115 Cal.App.2d 628, 632-633 [252 P.2d 713]; *Crevolin* v. *Crevolin,* 217 Cal. App.2d 565, 572-573 [31 Cal.Rptr. 622].)

Here, there can be no question about the ability of defendant to pay. His annual income was approximately $229,000. While it is difficult from this record to determine the value of his assets, it appears safe to say that they were worth not less than two million dollars, and probably considerably more than that figure.

■ The wife had an income of approximately $3,360 per year from interest and dividends. Counsel for defendant point out that she had jewelry and furs worth many thousands of dollars, and that her interest in their Drury Lane home was a very substantial figure. It appears that the wife had bearer bonds in the face value of $20,000 and 456 shares of Avnet stock in her possession. It seems, however, that defendant claimed these last two items. In any event under the authorities we have cited the wife could not be compelled to dispose of this property to support herself pending trial and to pay her counsel.

At the hearing on the order to show cause it developed that plaintiff had funds in her possession amounting to approximately $59,800. It also appeared that she had unpaid bills amounting to some $21,500. This included furniture in the approximate amount of $9,000 that had been ordered and delivered. However, $10,000 had been set aside in a fund denominated "furniture account" which was apparently available to pay for the furniture. This left other bills of some $11,500 to be paid.

Defendant was interested in some 30 corporations. There was a dispute as to what portion of the couple's property was community and what was separate. It was conceded that the accounting work was a major undertaking, requiring probably 1,000 hours according to the opinion of the accountant who had been working on the case for approximately 100 hours. He charged $20 per hour. (He had an unpaid bill of $1,650 for services rendered.) There was thus a potential liability for accounting fees in the preparation of her case of approximately $20,000.

Some discovery proceedings had been had; others would no doubt be necessary. Appraisers too were likely to be required. The court costs of a case as complicated as this one could well run into many thousands of dollars.

The trial judge took all of these matters into account in making his order. He provided that from the funds plaintiff had in her possession she should pay the unpaid bills, and that the furniture should be paid for from the funds in the "furniture account." The court further ordered that from the funds held by her plaintiff should pay "all reasonable costs and expenses of maintaining this action, including costs and expenses incurred but not yet paid, and for depositions, accountants and appraisers." It is apparent that all, or substantially all, of the funds that plaintiff had in her possession might well be consumed in the event this case went to trial and was fought through as vigorously as it was on the hearing on the order to show cause which consumed four days. This explains why no order was made against defendant for court costs. But it also indicates the necessity of awarding plaintiff temporary support pending trial and attorneys' fees.

In the circumstances it cannot be said properly that the court abused its discretion in impliedly finding that the element of necessity was sufficiently established to justify making these awards.

On the question as to the asserted excessiveness of these

awards, very little need be said. Plaintiff and defendant had developed a very high and expensive style of living. Her testimony indicated she required in excess of $5,000 per month to cover the living expenses of herself and two children. The total award was $3,800 per month. In view of the entire financial and social picture it cannot be said that the trial court abused its discretion in making these awards.

*Loeb* v. *Loeb*, 84 Cal.App.2d 141 [190 P.2d 246], relied on by defendant, is distinguishable. In that case ". . . the record disclosed that the wife's living expenses were not over $665 per month and that her income from her own resources was not less than $795. Thus, her income exceeded her expenditures by approximately $130 per month." (Quoted from the court's discussion of the *Loeb* case in *Primm* v. *Primm, supra,* page 697.) This is not the situation in the instant case.

We do not regard the award for attorneys' fees as being excessive. The trial court noted the legal and factual complexity of the case and the difficulty of getting complete and accurate financial figures together from all the diverse operations of defendant. The indications, of course, then were that the case would go to trial and would be bitterly contested and that the trial would cover an extended period. The award of $25,000 on account was well within the bounds of reasonable judicial discretion. (Cf. *Crevolin* v. *Crevolin,* 217 Cal.App.2d 565 [31 Cal.Rptr. 622].)

We deem it unnecessary to discuss other points that counsel have debated.

Defendant has also appealed from the order of October 28, 1963, denying his motion to correct the order of October 18, 1963, for clerical error. He has not, however, presented any argument in his briefs or orally in support of his appeal from this latter order. We must, therefore, assume that he has abandoned that appeal. It follows that it must be dismissed.

The appeal from the order of October 28, 1963, is dismissed. The order of October 18, 1963, is affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied March 9, 1965, and appellant's petition for a hearing by the Supreme Court was denied May 5, 1965.