[Civ. No. 52346. First Dist., Div. Three. Mar. 25, 1983.]

In re the Marriage of INGEBURG and JOHN MUNGUIA.
JOHN MUNGUIA, Appellant, v.
INGEBURG MUNGUIA, Appellant.

**COUNSEL**

M. R. Regalado, Sonja Sandeman, Lawrence A. Gibbs and Friedman, Sloan & Ross for Appellant Husband.

Erwin F. Fredrich for Appellant Wife.

**OPINION**

**BARRY-DEAL, J.**—On appeal from an interlocutory judgment of dissolution of marriage entered on August 29, 1980, appellant wife challenges the valuation and characterization of two tavern businesses in San Francisco

(Wagon Wheel and Trad'r Sam's) and the refusal of the trial court to divide the cash value of the community property life insurance policies. Wife further argues that the court erred in ordering her to pay 40 percent of husband's private investigator fees, a debt incurred after separation of the parties. In addition, wife claims the award of attorney's fees and costs to her was insufficient and was an abuse of discretion.

## Statistics

Ingeburg Munguia and John Munguia were married on June 19, 1966. Two children were born of the marriage. Appellant wife had two children by a previous marriage. The date of separation was November 8, 1979. Husband filed the petition for dissolution of the marriage.

## Wagon Wheel Bar

The parties agree that the Wagon Wheel bar, purchased in 1976, was a community asset, but disagree over its value. Wife worked there for three years before the parties separated; husband has had sole management and control over the property since January 1980. Whether the premises will be secured by a continuation of the lease is one of the main contested issues, significantly impacting the valuation of the property.

During the four-day trial in July 1980, husband testified that the current value of the bar was approximately $40,000 with the lease expiring March 31, 1981, and $60,000 to $65,000 with an additional five-year lease. Husband offered expert testimony (LeNois Wakefield) estimating the value of the business at $41,500 to $65,800. Wife offered expert testimony (Constantin Tivon) confirming the significant fluctuation in value ($42,000 to $75,000) depending on the length of the leasehold term. In addition, the leasing agent for the owners of the Wagon Wheel premises testified that the owners were willing to consider a three-year lease extension. Husband offered no evidence to rebut the leasing agent's testimony or to support the court's implied finding that the lease would not be renewed.

 Wife contends that the trial court should have reserved jurisdiction over the Wagon Wheel until a lease could be concluded. The trial court specifically refused to reserve jurisdiction and placed its community property value at $42,000.

Wife's argument is persuasive. In a dissolution proceeding, it is the duty of the court to make an equitable distribution of the community property. (Civ. Code, § 4800; *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 267 [105 Cal.Rptr. 483].) It is an abuse of discretion for the trial court

to attempt to divide "conjectural" community assets. (*In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 676 [143 Cal.Rptr. 94] [disability allowance of nondisabled worker].) In order to avoid the unequal distribution of community assets which cannot be accurately valued at the time of trial, Civil Code section 4800, subdivision (a), authorizes the court expressly to reserve jurisdiction over certain properties.

 Husband has exercised sole management and control over the property since January 1980. Section 5125, subdivision (e), of the Civil Code places a duty of good faith on the husband as a fiduciary for his wife which does not terminate upon separation of the parties as to assets remaining in his hands. (See *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247]; see also *Leff* v. *Gunter* (1983) 33 Cal.3d 508 [189 Cal.Rptr. 377, 658 P.2d 740].) It may be husband's fiduciary duty to maximize the value of the Wagon Wheel by securing a continuation of the lease. Because of the great disparity in property value depending on whether or not the lease is renewed, the court should have retained jurisdiction over the asset to insure an equal division of community property under Civil Code section 4800.

At oral argument counsel for husband stated that, although as of the present time husband has not entered into a renewed lease, the business was still occupying the premises on a month-to-month basis. Thus, despite husband's failure or inability to renew the lease, the Wagon Wheel has in fact continued to operate on the premises for two additional years. Upon remand the trial court should determine whether the lease has been renewed. If so, it should revalue the property, taking this factor into account. If not, it should determine whether this is due to husband's intentional mismanagement or negligence, and if that is the case, this too should be taken into account in redetermining the value of the Wagon Wheel.

### Trad'r Sam's

 A second tavern in San Francisco, Trad'r Sam's, was purchased on July 29, 1977. The liquor license was held in four names, reflecting a 50 percent partnership interest by husband and wife and a 50 percent partnership interest by Elaine and Vasilios Karadais, husband's sister and her husband.[1] The purchase price of $67,000 included a $26,500 gift from husband's father, Louis Munguia, to each couple, and an $18,000 promissory note signed by all four in favor of Montgomery Investment Company. The parties disagree as to the characterization of the property.

---

[1] We note that the Alcoholic Beverage Control Act requires that each partner be named and that each partner sign the application for a liquor license. (Bus. & Prof. Code, §§ 23951, 23953.)

Daniel Heinrichs, an investigator for the Department of Alcoholic Beverage Control, testified that, had husband's father applied for a license in conjunction with Trad'r Sam's, the department would have denied it because of his poor record. Husband testified that in fact his father owned the bar and that the documents indicating ownership in the four individuals mentioned above were used to deceive the department. He further testified that he and his wife never received any income from the bar and that he owned no interest in it.

Wife introduced evidence of the promissory note which she and husband signed. She also introduced a signed statement from husband's father confirming the fact of the gift to husband and a portion of husband's 1978 federal income tax return in which he reported the partnership interest in Trad'r Sam's.

Upon this evidence the trial court found that the community had no interest in Trad'r Sam's.

Property acquired during marriage is generally presumed to be community property under Civil Code section 5110. The form of title to Trad'r Sam's liquor license as a partnership between husband and wife raised an even stronger presumption of the community nature of the asset. "It is because of this express designation of ownership that a greater showing is necessary to overcome the presumption arising therefrom than is necessary to overcome the more general presumption [of Civ. Code, § 5110]." (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285] [filed Aug. 7, 1980].) To prevail on this issue husband was required to show that there was an agreement or understanding with wife that the specified ownership interest was not what the parties intended. Our review of the record reveals that husband made no such showing. We therefore conclude that the trial court erred in finding no community interest. Upon remand the trial court may, if it deems appropriate, take additional evidence on the question whether there was an agreement or understanding between husband and wife that Trad'r Sam's was not community property. (See *In re Marriage of Lucas, supra,* 27 Cal.3d 808; *In re Marriage of Cademartori* (1981) 119 Cal.App.3d 970 [174 Cal.Rptr. 292].)

### Community Life Insurance Policies

■ The parties agreed that three life insurance policies on the life of the husband with a total cash value of approximately $4,900 were community property. Appellant wife asked that the policies be cancelled and the cash value proceeds be divided. Husband suggested that the policies be kept in force with the children as irrevocable beneficiaries. The court, in effect,

granted husband's request on the policies, finding them community property, but ordered equal division of their value at the time of trial only if the policies were later cancelled or surrendered.

Subdivision (a) of Civil Code section 4800 requires the court to distribute equally existing community property and necessarily includes court authorization to order a sale of community assets to accomplish this end. (See *In re Marriage of Holmgren* (1976) 60 Cal.App.3d 869, 873 [130 Cal.Rptr. 440] [residence].) Wife holds "present, existing, and equal interests" in the community property insurance policies (Civ. Code, § 5105), as well as equal rights of management and control (Civ. Code, § 5125).

Denying wife liquidated access to her portion of the community assets does not confer equal rights on the parties and was in error. While husband may choose to keep the policies in effect with the children as irrevocable beneficiaries, wife is entitled to receive one-half of the cash value of the policies at the time of trial. (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1].)

### *Assignment of John T. Lynch Company Debt*

Wife testified that in September 1979 she went to Germany to visit her mother, who was dying of cancer. She stayed there seven weeks, during which time she fell in love with a man in the process of getting divorced. She returned to the family residence for about a week and contemplated a return to Germany with her two younger children at her mother's doctor's request. She told husband of her desire to return to Germany, but he was against it. They discussed divorce, but she did not tell him about the man she had met.

Wife acknowledged that when she left the family home on November 8, she left a note stating that she would return in a few days to finalize the decision about divorce. She had already more or less decided to return to Germany, but was afraid to tell husband because of his violent nature. She took the parties' two children and went to Germany, where they stayed with her new male friend. (When wife returned to this country in January 1980, the man accompanied her.)

Wife called her two older children, who were staying with husband, after she was in Germany a few days. Daughter Marilyn testified that she immediately told husband that wife and their two children were in Germany and that she had received the call.

Husband testified that a few days after wife left the second time he became worried and filed a missing person report with the police. He stated that he

determined his wife's location through the services of a private investigator. He went to Germany, accompanied by the investigator, located the children in a hospital waiting room, removed them to France, had the investigator call wife to inform her that they were taking the children home, and transported them back to the family residence. Wife returned with her friend over a month later.

The bill for the private investigator's services totalled $9,053.18. Among the items charged were 36 hours of conferences with client and attorneys ($1,440), 72 hours locating wife in Germany ($2,280), and the agent's expenses in Germany ($2,500).

■ The trial court found that the entire expense was a community debt and ordered husband to pay 60 percent and wife to pay 40 percent. The court erred. The parties agreed that the date of separation was November 8, 1979. This debt, which was incurred after separation and was unrelated to the community, should properly be viewed as separate. (*In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 600 [141 Cal.Rptr. 597].) Furthermore, husband's own attorney admitted that the obligation was incurred by husband "perhaps rashly and indiscreetly [and possibly not] prudently . . . ." We are aware of husband's argument that the obligation "exists because of the conduct that was undertaken . . ." by the wife, and while we do not condone her behavior in removing the children without husband's knowledge or permission, neither can we agree with the trial court that this obligation constituted a community debt.

### Partial Award of Attorney's Fees to Wife

■ Wife incurred $5,000 (100 hours at $50) of legal fees at trial. She paid $500 in advance. Legal services concerned visitation hours, conciliation proceedings, child custody, support payments, and other matters. The trial court awarded wife a total of $1,000 in attorney's fees.

Civil Code section 4370 specifically authorizes the award of attorney's fees as may be *reasonably necessary* to maintain or defend a proceeding. ■ ■ The law regarding reasonableness of attorney's fees in domestic relations cases was stated as follows in *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296, 300 [149 Cal.Rptr. 918]: "For the most part, the law governing an award of attorney fees in a dissolution action and its review on appeal are well settled. A motion for attorney fees and costs in a dissolution action is addressed to the *sound discretion* of the trial court, and in the absence of a *clear showing of abuse,* its determination will not be disturbed on appeal. (*Primm* v. *Primm* [1956], 46 Cal.2d 690, 696 . . . ; *Smith* v. *Smith* [1969], 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282].)

The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, *considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. (Smith* v. *Smith, supra*; *Newbauer* v. *Newbauer* [1949], 95 Cal.App.2d 36, 40 . . . .)

"The *major factors* to be considered by a court in fixing a reasonable attorney's fee were summarized in *Berry* v. *Chaplin* [1946], 74 Cal.App.2d 669, 679 . . . : 'the *nature of the litigation*, its *difficulty*, the *amount involved*, the *skill required* and the *skill employed* in handling the litigation, the *attention given*, the *success* of the attorney's efforts, his *learning*, his *age*, and his *experience* in the particular type of work demanded [citation]; the *intricacies and importance* of the litigation, the *labor* and the *necessity for skilled legal training and ability* in trying the cause, and the *time* consumed. [Citations.]' . . . In addition, the *financial circumstances of the paying spouse* may be considered. (*Smith* v. *Smith, supra,* 1 Cal.App.3d at p. 958; *Howard* v. *Howard* [1956], 141 Cal.App.2d 233, 238 . . . ; *Pope* v. *Pope* [1951], 107 Cal.App.2d 537, 539-540 . . . .) We add that the *responsibility undertaken* is also an important consideration. (*Patten* v. *Pepper Hotel Co.* [1908] 153 Cal. 460, 472 . . . .)

" . . . . . . . . . . . . . . . . . . . . . .

". . . [W]hen the trial court is informed of the extent and nature of the services rendered, it may rely on its own experience and knowledge in determining their reasonable value. [Citations.]" (*In re Marriage of Cueva, supra,* 86 Cal.App.3d at pp. 296, 300, italics added, fn. omitted.)

Reasonable value of services need not bear a direct relationship to the number of hours spent working on the case, because some hours may be unproductive, whereas others may be exceedingly valuable. (*Id.,* at p. 302.)

██ When these principles are applied to the facts of the case at bench, we must conclude that the court abused its discretion in awarding wife only $1,000 of her attorney's fees. In particular, we note that husband retained management and control over the community business and was therefore in much more favorable financial circumstances than wife, and also that a large portion of the attorney's fees were necessarily attributable to a custody battle initiated by husband, in which he did not prevail.

██ Upon remand the court should redetermine the amount of its award to wife for attorney's fees, keeping these factors in mind, as well as the rule that an award of attorney's fees is independent of the division of community property, but that under appropriate circumstances a party's liability

for his or her own attorney's fees may be considered in relation to the division of community property. (*In re Marriage of Jafeman, supra,* 29 Cal.App.3d 244, 262-267.)

### Wife's Costs for Expert Fees

In its memorandum of decision of July 15, 1980, the trial court ordered that husband pay to wife's counsel attorney's fees discussed above, "plus costs pursuant to cost bill as submitted." On July 17, wife served husband by mail with her cost bill, which was filed with the court on July 21. On August 14, 1980, husband filed his notice of motion to tax costs, stating that the motion was based on the provisions of Code of Civil Procedure section 1033 and arguing, inter alia, that wife's memorandum of costs had been filed prematurely under that section, since no final judgment had been entered. Wife filed opposition to husband's motion on August 25, alleging that his opposition had been untimely in light of the requirement in Code of Civil Procedure section 1033 that it be filed within 10 days.

At the hearing on the cost issue, the trial court properly stated that it was not "concerned about the timeliness arguments . . . ." ·Since this was a proceeding under the Family Law Act, the question of costs was governed not by Code of Civil Procedure section 1033, but by Civil Code section 4370, which provides that during the pendency of the proceeding the trial court may order one party to pay the other's attorney's fees and costs which may be reasonably necessary to maintain or defend the proceeding. (Civ. Code, § 4370, subd. (a); *Crevolin v. Crevolin* (1963) 217 Cal.App.2d 565, 573 [31 Cal.Rptr. 622]; see 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 149 et seq., p. 5017 et seq.)

 As to the merits, the trial court allowed wife costs for filing fees, transcripts, and the like, totalling under $300, but denied her expert fees totalling $840. The court stated, "I commonly do not exercise in favor of expert fees because I don't think it's proper under the code section. [¶] You're probably right, there is a little broader discretion, but I don't think it's proper."

Wife's costs included fees for expert testimony by child psychiatrist Dr. Warren T. Vaughan regarding child custody and expert testimony by Mr. Constantin Tivon regarding the value of the two taverns. Dr. Vaughan was called by wife because husband refused to accept the custody report ordered by the court, which recommended physical custody to wife. The court eventually followed the custody report's recommendation. Mr. Tivon was called by wife as the only court-qualified expert on the valuation of the bar busi-

nesses. The appraised value of the tavern property significantly affected wife's potential community division of the assets.

 "In order to be entitled to an award the wife must demonstrate that her resources are not sufficient to meet the expenses of litigation. [Citation.]" (*In re Marriage of Jafeman, supra,* 29 Cal.App.3d at p: 264.) Although the reasonableness of the award is within the discretion of the trial court, a wife is not required to impair the capital of her separate estate in order to defray her litigation costs. (*Bernheimer* v. *Bernheimer* (1951) 103 Cal.App.2d 643, 648 [230 P.2d 17].) There is no evidence that wife had any significant income; her waitress job netted approximately $450 per month. Husband, on the other hand, had control of the community business and was clearly in a superior position financially.

The trial court's statement that an award of expert fees is not "proper" was in error. The purpose of an award under Civil Code section 4370 is to provide a party with an amount necessary to litigate the controversy properly. (*In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701].) To that end, awards have been approved which included cost of accounting services (cf. *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 898 [101 Cal.Rptr. 295]) and investigation into personal conduct of a party (*Crevolin* v. *Crevolin, supra,* 217 Cal.App.2d 565, 573-574).

In *Hutchinson* v. *Hutchinson* (1963) 223 Cal.App.2d 494 [36 Cal.Rptr. 63], the court quoted the language in the statute (then § 137.3 of the Civ. Code) and stated, "Quite obviously, the reference to 'the cost of maintaining or defending the action' means something other than and in addition to attorney's fees. Also, such a cost means something other than and in addition to what are referred to as 'costs and necessary disbursements in the action.' (Code Civ. Proc., § 1033.)

". . . . . . . . . . . . . . . . . . . .

"While the expenses in these cases were incurred for an investigation of the financial aspects of the case, we see no difference, so far as section [4370] is concerned, between that type of investigation and one which is directed to the alleged conduct of the parties. . . ." (*Id.,* at pp. 508-509.) This reasoning is equally applicable to the costs in question in the case at bench.

 Furthermore, the Supreme Court has acknowledged that in the proper case costs may be awarded to enable a party to summon witnesses and to take depositions. (*Stewart* v. *Stewart* (1909) 156 Cal. 651, 655-656

[105 P. 955] [no abuse of discretion in denying costs where showing patently deficient].)

## Conclusion

The following portions of the judgment are reversed: (1) that portion refusing to reserve jurisdiction over the "Wagon Wheel" community asset; (2) that portion finding that "Trad'r Sam's" was not a community asset; (3) that portion refusing to compensate wife for her share of the cash value of the community life insurance policies; (4) that portion assigning 40 percent of the John T. Lynch Company debt to wife; (5) that portion awarding wife $1,000 of her attorney's fees; and (6) that portion striking wife's costs for expert fees. In all other respects, the judgment is affirmed. Costs on appeal are awarded to appellant wife. Cross-appeal by husband, having been abandoned, is hereby dismissed. The cause is remanded to the trial court for proceedings consistent with the views expressed herein.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied April 19, 1983.