[No. C006464. Third Dist. Nov. 28, 1990.]

In re the Marriage of WILLIAM and REBECCA PARTRIDGE.
WILLIAM PARTRIDGE, Appellant, v.
REBECCA PARTRIDGE, Respondent.

**COUNSEL**

Kenneth N. Meleyco and Stephen A. Holmes for Appellant.

Margaret Mary Johnston for Repondent.

**OPINION**

**SPARKS, Acting P. J.**—William Partridge appeals from the judgment of the trial court ordering him "to hold Respondent [Rebecca Partridge] harmless for tax liabilities" and "to pay $500 for Respondent's attorney fees and costs." He contends both aspects of the judgment were an abuse of the lower court's discretion. We agree the trial court could not allocate the entirety of the community's tax debts to the husband as a sanction for his irresponsibility with respect to his internal revenue duties. For that reason, we shall reverse with directions. In light of this disposition, we shall also direct the trial court to reconsider the award of attorney's fees.

## Factual and Procedural Background

The facts are not really disputed. The parties were married in November 1983. During the course of 1986, husband was self-employed, operating a small contracting firm called The Woodworks. Wife, who worked for American Savings Bank as a supervisor, helped him to a certain extent with the books for The Woodworks; she set up and made entries in a rudimentary accounting system that kept track of receipts and expenses, and she balanced the company's checkbook. Although she knew the gross receipts of the company, she did not know to what extent this was diminished by total expenses. She did not make deposits and was not a signatory to any of the company's accounts. Because the net income of the company was inadequate, husband succumbed to temptation and did not file his quarterly estimated taxes, hoping business would pick up toward the end of the year and allow him to cover this liability. Wife was aware of his failure to make these payments. Whatever income from The Woodworks that was left after expenses was spent on the community.

The parties separated November 1, 1986. When the time came for them to file their 1986 tax returns, wife met with husband to get his records to give to their accountant. He was not forthcoming with this material (despite several calls from her) because he was aware of the large tax liability and wanted to avoid the problem by ignoring it. Ultimately, wife filed a return as "married filing separately" in January 1988 listing only her income and withholding, and claiming half of the community's available deductions. She received a refund of approximately $600. Husband also filed his "married filing separately" return at last in early 1988 based solely on his own 1986 income. As pointed out by the trial court, he failed to declare many business expense deductions to which he was entitled. He also listed only the one exemption for himself on his form 1040. He explained the return "was so late I thought it was best just to get whatever numbers I could get in and get it taken care of." His ultimate federal tax liability was $12,952 on the 1986 income and apparently $1,946 in state tax liability.

Husband had petitioned for divorce in November 1987. In March 1988, the parties had apparently reached a settlement except for the question of liability for the 1986 income taxes and payment of wife's attorney's fees. At the hearing on this matter in January 1989, husband offered to pay all tax penalties and cooperate in filing an amended joint return in order to accurately determine their 1986 tax liability. On the issue of attorney's fees, counsel for wife asserted (without contradiction on the record by husband's counsel) that she had never received word as to whether the issues other than tax and attorney's fee liability could be considered settled, so she had to prepare for a fully contested hearing. Counsel for husband asserted the

failure of wife to accept any portion of the community tax debt as her own had been the major roadblock to any settlement of this matter in which there were only negligible community assets. He also noted the incomes of the two parties were essentially equivalent, particularly in light of the child support payments.

As noted at the outset, the trial court ruled in favor of wife. To quote the full paragraph of the ruling, "Petitioner [husband] is to hold Respondent [wife] harmless for tax liabilities. The Respondent did everything in her power to file a joint return. Petitioner did nothing to file a return, thus requiring Respondent to take one[-]half of the deductions and file a separate but married return—to everyone's tax disadvantage. [¶] Petitioner is ordered to pay $500 for Respondent's attorney['s] fees and costs." The court did not order the tax refund received by wife to be divided.

Husband moved for a new trial. In his declaration in support, he said he consulted with his accountant regarding the business expenses he failed to claim, who determined it would make approximately a $1,000 difference in business income and $700 in tax liability; the accountant also told him that an amended joint return would reduce the tax by another $3,000. He again offered to bear all penalties on the tax liability. The motion renewed the arguments made previously, and also cited the failure to divide the 1986 tax refund received by wife. The court denied the motion without comment.

### DISCUSSION

Civil Code section 4800 [undesignated section references will be to this code] provides in pertinent part, "(a) . . . the court shall . . . divide the community estate of the parties equally . . . . [¶] As used in this section, 'community estate' includes both the community . . . assets and liabilities of the parties . . . . [¶] (c) The debts for which the community estate is liable . . . shall be . . . divided as follows: . . . [¶] (2) Debts incurred by either spouse after the date of marriage but prior to the date of separation shall be divided as set forth in subdivisions (a) and (b). To the extent that community debts exceed total community . . . assets, the excess of debt shall be assigned as the court deems just and equitable, taking into account factors such as the parties' relative ability to pay."

It has been noted that "the ultimate mandate of § 4800 is that the net 'community estate' division be equal." (2 Hogoboom & King, Cal. Practice Guide: Family Law (Rutter 1990) § 8:212, p. 8-175.10 [hereafter Hogoboom].) ■ "If incurred after date of marriage but prior to separation, the debt must be divided under CC § 4800(a) & (b)—i.e., ordinarily equally, subject to 'economic circumstances' [see § 4800, subd. (b)(1)] and

'deliberate misappropriation' [see § 4800, subd. (b)(2)] provisions." (*Id.*, § 8:279.2, pp. 8-223-8-224.) However, to the extent debts exceed assets, an "equitable" division may be made, "which, in a proper case, may justify an unequal division." (*Id.*, §§ 8:280-8:281a, pp. 8-225-8-226, italics deleted.)

It is not disputed that the 1986 income of The Woodworks and the income tax liability on it were a community asset and liability. ▮▮▮ Accepting the representation that there were no significant assets of this marriage to offset this debt, the question is whether the exceptions to equal division enumerated above apply. Since wife does not attempt to justify the uneven allocation of the debt under the economic circumstances rationale—nor do we see its application here—our analysis will be limited to the remaining two.

As she fashions the argument attempting to support this windfall, wife relies on section 5125, which gives primary management and control of a business to the spouse operating or managing the business (subd. (d)) and reaffirms that the operating spouse owes a fiduciary duty to the other in the management and control of the business (subd. (e); see also § 5103). She asserts the failures by husband to keep adequate records, to pay the estimated tax, and to cooperate in filing the tax return constituted a breach of this fiduciary duty. In her view, even though his actions in managing the business might have been merely negligent, failure to cooperate in filing the return amounted to gross mismanagement because it is "impossible to determine what the actual tax liability would have been." She claims this is deliberate misappropriation under *In re Marriage of Munguia* (1983) 146 Cal.App.3d 853 [195 Cal.Rptr. 199].

The case is inapposite. The central issue in *Munguia* was the valuation of a community asset, a bar. The value of the bar was directly dependent upon the length of its leasehold, a matter that had yet to be determined as of the time of trial. The appellate court simply held it was error for the trial court to adjudicate the value of the asset before the length of the leasehold was settled; instead, it should have reserved jurisdiction to do so once the lease length was determined. In dicta, the court noted that if the husband, who had sole management and control, were to be shown to have intentionally mismanaged the lease negotiations to thwart a long-term lease (thus breaching his fiduciary duty to the community), this could be taken into consideration in redetermining the value. (146 Cal.App.3d at p. 858.) Other than stating the undisputed principle that intentional mismanagement is a factor in valuation, the case does not support wife's position as it does not contain any benchmark by which it can be said husband's conduct amounted to intentional mismanagement.

■ On the other hand, as the reviewing court noted in *In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 855 [164 Cal.Rptr. 653], "as an exception to equal division, 'the court may award, from a party's share, any sum it determines to have been *deliberately misappropriated* by such party to the exclusion of the community property . . . .' [§ 4800, subd. (b).] (Italics added.) But nothing is said in the statute about negligence. The term 'deliberate misappropriation' has reference to calculated thievery by a spouse, not the mishandling of assets. [¶] We perceive that the same distinction should be made with respect to *debts*." (Italics original.) *In re Marriage of Hirsch* (1989) 211 Cal.App.3d 104 [259 Cal.Rptr. 39], goes one step further. The *Hirsch* court held that so long as the community received *some* benefit from a spouse's actions, it was properly charged with liabilities arising from those actions, regardless of whether they be characterized as negligent or intentional (presumably an expression of the principle that they who accept the benefit of a transaction must bear the burden). (*Id.* at pp. 108-111.)[1]

■ First of all, we do not think wife is in any position now to claim she had some fraud perpetrated upon her in breach of the fiduciary duty between spouses; she was well aware (or should have been in balancing the business checkbook and making ledger entries) that he was not making the required payments, yet accepted the fruits of his actions. Nor do we see any deliberate misconduct in his behavior otherwise. There is no showing husband has been guilty of the inverse of calculated thievery (which perhaps may be termed calculated irresponsibility). He did not attempt to diminish community assets to the detriment of his spouse; rather, he initially attempted to *augment* assets available to the community (albeit by impermissible means).[2] The absence of the *mala fides* necessary is also evidenced by his consistent willingness either to remedy the situation with an amended return or by holding the community harmless for the extent to which he

---

[1] We have encountered two other cases in the course of our research which discuss unequal allocation of debt, but the ratio decidendi of those cases is not applicable. *In re Marriage of Beltran* (1986) 183 Cal.App.3d 292, 294-295 [227 Cal.Rptr. 924] and footnote 2, explicitly eschews "deliberate misconduct" analysis, relying instead on principles of community reimbursement for separate debt. There the court held that a spouse whose child molestation conviction had resulted in the forfeiture of his military pension must reimburse the community for that loss. It is not argued here that this tax liability is somehow husband's separate debt. *In re Marriage of Stitt* (1983) 147 Cal.App.3d 579 [195 Cal.Rptr. 172], is extensively criticized by the *Hirsch* court for entirely ignoring the equal division principles of section 4800 in holding the community harmless for the costs of the unsuccessful defense of the wife's embezzlements charges, basing its result instead on an "inherent" legislative purpose contained in section 5122 (which only purports to declare the liability of spouses to third parties and set up an order of satisfaction for third party liability).

[2] Even if we were to analogize to the two cases cited in the margin, we do not find his conduct to have reached the level of malfeasance present in those cases. Although his behavior certainly cannot be condoned, his malfeasance lay only in attempting to postpone payment of his tax liability as long as possible, not total tax evasion (as he ultimately owed up to his responsibility along with the penalties).

increased its liability. Nor do his actions subsequent to the initial failure to pay estimated tax amount to deliberate misconduct. It is actually wife's refusal to go along with this remedial course (or the trial court's unaccountable refusal to so order) that is the present source of the community estate's diminishment; there is no basis in fact for the claim the community can never determine accurately the proper tax liability. Nor was wife harmed in the slightest by being forced to file separately. Rather than being party to the large community tax debt, she received a refund! She simply did not receive as large an unwarranted benefit as she might have because she only took half the community deductions and paid tax at the higher marginal rate for "married filing separately."

Moreover, even if the conduct by husband indeed satisfied the "deliberate misappropriation" exception to equal division, this does not support the ruling of the trial court that wife is to be held harmless for the *entirety* of the tax liability. As noted, *Munguia* suggested such conduct is a factor to be considered in valuation; it did not say the husband could be disqualified from any interest in the asset. ▮ "Where one spouse has 'deliberately misappropriated' community assets to the exclusion of the other, the court may award a greater share of the remaining property to the 'innocent' spouse *to make up for the interest he or she otherwise would have received.*" (2 Hogoboom, *supra*, § 8:219, p. 8-177 [italics supplied]; accord, *In re Marriage of Schultz, supra*, 105 Cal.App.3d at p. 855.) ▮ There is a certain level of 1986 income tax liability (which we might as well refer to as the optimal level) which is due regardless of when it was paid, the manner in which the parties happened to file, or the amount of deductions they may have claimed. Thus, with respect to this optimal level of tax, the actions of husband had absolutely no effect, and the deliberate misappropriation doctrine consequently can and should not act to negate wife's liability for half of that.

In short, the undisputed facts show the nature of husband's conduct was not such that the court was entitled to make an uneven allocation of liability for debt under the deliberate misappropriation doctrine. But even if we were to agree he is to be penalized for his actions, it can only be to the extent to which he has damaged the community estate (a burden he was repeatedly willing to shoulder below).

The entirety of her fallback argument under the equitable distribution standards for a negative community estate consists of the conclusory statement, "The Court took into account all relevant factors, including Appellant's unreasonable behavior, and made what Judge Saiers determined to be 'an equitable distribution.'" To the contrary, we find no factors present which justify such a division and thus, of necessity, find an abuse of discretion.

The statute, as noted above, commands that the exercise of equitable discretion be based upon factors "such as" relative ability to pay. The early (under the modern divorce scheme) case of *In re Marriage of Eastis* (1975) 47 Cal.App.3d 459 [120 Cal.Rptr. 861], which preceded the statutory authorization for uneven allocation of debt (see 2 Hogoboom, *supra*, § 8:281a, pp. 8-225-8-226), stated it may be based on "the respective earning capacities of the spouses and other *relevant factors*." (*Id*. at p. 464 [italics supplied].) The only other case we have encountered dealing with the problem (appellate review, as pointed out by *Eastis*, generally being precluded by financial considerations) is *In re Marriage of Vanderbeek* (1986) 177 Cal.App.3d 224 [222 Cal.Rptr. 832]. "At some point, reality must triumph over theory, and under this coercion the deficit must be apportioned according to ability to pay." (*Id*. at pp. 233-234.) The court upheld the award to the husband of both the substantial assets and the even more substantial debts on the basis of his business acumen and the need for abilities in negotiations and asset sales to satisfy the debts. (*Id*. at pp. 234-235.)

Since the parties have equivalent earnings, this is not a basis for awarding husband the entirety of the tax debt to repay. Nor is his career any more secure than hers. To the extent that his behavior might be considered, once again it is unfair and indefensible to assign the entire burden to him where only a portion of the tax liability can be attributed to his conduct. There are no other factors present relevant to the allocation of this debt. The resolution of this issue has no support in the record and must be considered an abuse of discretion amounting to obvious unfairness, which we may correct on appeal. (See *Muther* v. *Muther* (1963) 212 Cal.App.2d 778, 783 [28 Cal.Rptr. 200].) Thus, we shall reverse with directions. The trial court should enter a new judgment directing the parties to file amended joint returns (insofar as federal law permits), with the proper business deductions, for 1986 and then split the underlying tax liability equally after giving proper credit for wife's receipt of the $600 refund. Husband should be directed to hold wife harmless for all penalties in connection with this 1986 joint return. The court should reserve jurisdiction in the event the parties are unable to file a corrected return, in which event the court should receive testimony as to the additional amount of tax for which husband has caused the community to be liable, for which he should be directed to hold the community harmless (again receiving proper credit for the 1986 refund). In light of his *status* as prevailing party, we deny the request by wife for attorney's fees on appeal.

■ With respect to the award of attorney's fees below, the court is authorized under section 4370.5 to "make an award under this chapter where the making of the award, and the amount of the award, is just and reasonable under the circumstances of the respective parties." The statute

then lists two criteria for determining what is just and reasonable: (1) "[t]he need for the award to enable each party, to the extent practical, to have sufficient financial resources to adequately present his or her case [using the standards for an award of spousal support in section 4801, subdivision (a)]" and (2) "[t]he extent to which the conduct of each party and the attorney furthers or frustrates the policy of the law to promote settlement of litigation." Wife has claimed entitlement only under the latter (the parties' equivalent financial situation seeming to preclude the former).

While the amount of fees certainly would not be an abuse of discretion, our finding husband's position on the tax issue to have been warranted may have undermined the basis for the award of fees (the trial court not having specified the basis for its award), as the remaining issues are negligible (in terms of both financial impact and trial preparation time) in light of the $10,000 tax bill and it is possible the court might not find husband's litigation conduct otherwise to warrant sanctioning. On the other hand, it is possible the court may still find unwarranted his requiring her to litigate the other issues, such as the small increase in future child support, payment on his huge child support arrearages, or splitting the $22/month additional health care cost. Given the possible infirmity and the absence of factors in the record which would allow us to say with certainty that the trial court would have chosen the same course, the prudent action for us is to vacate the award of fees and remand for reconsideration in light of the resolution of this appeal.

### DISPOSITION

That portion of the judgment ordering husband to hold wife harmless for tax liabilities and to pay $500 in attorney's fees is reversed. The cause is remanded to the trial court for further proceedings consistent with the directions in this opinion. In all other respects, the judgment is affirmed. Neither party shall recover costs of appeal.

Davis, J., and Nicholson, J., concurred.