Filed 3/15/13  Marriage of Chiu CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of LEEYUNG P. and NEWTON P. CHIU. | |
| LEEYUNG P. CHIU,<br><br>        Respondent,<br><br>v.<br><br>NEWTON P. CHIU,<br><br>        Appellant. | A132290<br><br>(San Francisco County<br>Super. Ct. No. FDI-03-753401) |

In this dissolution proceeding, appellant Newton Chiu appeals from the trial court's order imputing to him $450,000 in fictive income based on his alleged failure to collect sufficient rents from community-owned apartment buildings during a 45-month period of marital separation.  He claims the court relied on an erroneous legal theory in making this determination.  He also contends the court erred in failing to award him reimbursement for separate property he used to maintain and repair one of the parties' buildings.

We conclude the trial court erred in imputing $450,000 in lost rental income to appellant.  We remand the matter to the court for proper determination of the amount of the parties' equalization payment.  We also conclude the trial court's decision to deny his reimbursement request is supported by substantial evidence.  We therefore reverse the order in part, and affirm in part.

**FACTUAL BACKGROUND AND PROCEEDURAL HISTORY**

### I. *Factual Background and Pretrial Proceedings*

The parties have been married twice. They were first married in May 1969 in China. Appellant emigrated to the United States in 1974 and has been employed by the Port of Oakland as a janitor since 1977.[1] Respondent came to the United States to join him in 1979. Over time, appellant purchased several inexpensive properties with the goal of fixing them up in order to rent or sell them. The parties separated for the first time in March 1987. After the separation, appellant commenced a dissolution proceeding in Alameda County. A default judgment was filed in December 1988. The judgment addressed only one of the properties owned by the parties.

Appellant married and divorced another woman between 1989 and 1991. The parties were again married in December 1992. They separated for the final time in June 1994. By then, they owned four properties in Oakland.

On April 3, 2003, respondent filed a petition for dissolution of the second marriage.

On May 9, 2005, respondent filed a complaint for joinder as to appellant's sister and brother-in-law. The complaint alleges that appellant, along with his sister and her husband, had bought a property located at 900 Foothill Boulevard in Oakland in 1985, two years before he filed for dissolution of the first marriage. The building was not mentioned in the judgment of dissolution. Respondent claimed appellant's interest in the property was a community property interest subject to division.

On May 11, 2005, the trial court directed that the property at 1710 15th Avenue be listed for sale. In December 2005, appellant bought out respondent's interest in the property.

On April 18, 2008, the trial court filed a stipulation and order appointing John Mangini as the court's accounting expert under Evidence Code section 730. He was directed to prepare a written tracing of income, rents, and expenses related to the parties'

---

[1] Appellant was 74 years old at the time of trial.

real estate holdings. The parties were to cooperate in providing him with all necessary documentation.

On May 26, 2009, the trial court filed an order naming Roxanne Ekhos as its new accounting expert, in place of Mangini. Appellant was directed to provide her with any information that Mangini had previously requested.

On January 21, 2010, the trial court filed a judgment determining that 50 percent of the 900 Foothill Boulevard property was the parties' community property.

On September 10, 2010, a status-only divorce judgment was entered. All other issues were reserved.

On February 24, 2010, the trial court filed an order after settlement conference. The order sets forth nine issues to be addressed at trial, including whether appellant breached his fiduciary duty to respondent by mismanaging three of the properties during periods of marital separation. The order also states that the trial was to address appellant's claims for reimbursement, conditioned on him providing a list of claims and supporting documentation to Ekhos and respondent's counsel at least 60 days prior to trial.

## II. Trial

### A. Management of the Parties' Rental Properties

Matthew Smith testified on behalf of respondent as an expert in real estate appraisals. The property at 900 Foothill Boulevard has six units. In March 2009, he estimated $19,000 in repairs were necessary to make the property rentable. Only three of the units were habitable at that time. He estimated the property's market value at $835,000. By May 2010, the value had dropped to $600,000. The reason for the decline was lowered rental rates, which lowers the potential income that can be generated. In May 2010, he estimated the potential monthly rental income for all of the units was $6,050.

The property at 309 Foothill Boulevard also has six rental units. In March 2009, Smith estimated it needed about $33,000 in repairs to bring it to market condition. All the units were habitable, though the building itself needed repairs for problems such as

3

termite damage. At that time, he estimated the value of the property was $870,000. By July 2010, the value had declined to $500,035. The projected potential total rental income from all the units was $6,500 per month.

The final property is a four-unit building located at 1444 9th Avenue. Smith deemed all the units to be habitable, though the building needed about $19,000 in repairs. The estimated value of the property in March 2009 was $500,000. Similar to the other two properties, the value had declined to $330,000 by July 2010 due to market conditions. In July 2010, he estimated the total potential rental income for the building at $3,900 per month. Taking all three properties into account, there were 11 habitable units that were not being rented out in 2009.[2]

The rental properties had also been appraised in 2005. At that time, the appraisal report indicated that the units at 1444 9th Avenue and 309 Foothill Boulevard could have been made ready for occupancy with only minor repairs. However, seven of the 10 rental units in these two buildings were vacant at that time. Appellant testified the properties had water damage that the appraisal report did not take into account. By 2009, there were a total of 11 vacant units in the three buildings. Appellant testified the empty units were not habitable.[3]

Respondent testified she was unhappy with appellant's management of their rental properties. She also submitted a written trial declaration. After the parties formally separated, the number of units he rented out had decreased. The decrease in tenancy occurred mainly after 2003. Based on the low occupancy of the parties' rental properties during the time when they were under appellant's exclusive management and control, she requested he be charged with the rents lost due to his failure to ready all units for the rental market and/or rent those units deemed habitable. In her declaration, she did not allege that appellant had ever lied to her or withheld information from her concerning the

---

[2] Appellant occupies one of the units at 900 Foothill Boulevard.

[3] The report indicated that the three unoccupied units at 900 Foothill Boulevard were in need of extensive repairs.

management of the rental properties.  Nor did she allege he had ever stolen rents or managed the properties to benefit only himself.

On cross-examination, respondent conceded that even when she had sufficient funds she never offered to give appellant money to help manage or improve their properties.  She claimed, however, that he never asked her to do so.  After he gave her a buy-out payment in 2005 for the family residence on 15th Avenue, he prohibited her from entering the rental properties.  He has been solely and exclusively in control of those properties since the parties separated in 1994.

Appellant testified that beginning in June 30, 1994, there were 14 units available to be rented among all three properties.  He conceded occupancy of the buildings had declined since 2003.  The reason for the decline was that tenants were moving out due to the deteriorating condition of the properties.  He denied the decline had any relationship to respondent's filing of dissolution proceedings that year.

In 2009, appellant hired Victor Jin to manage the three rental properties and oversee needed repairs.  The biggest job was to have the foundation repaired at 1444 9th Avenue.  The job was not done because respondent was not willing to help appellant pay for it.  The initial estimate for that job came in at $25,000, but had increased to $50,000 by November 2009.  Jin did not complete all the repair jobs he was slated to do, and respondent did not help pay for any repairs during that year.  However, some painting was completed.

In calculating lost rental income, Ekhos compared actual rents to the full rental value as stated in the appraisers' reports.  As a second method of calculation, she also considered comparing the actual rents collected from 2005 through 2009 to the maximum rents ever collected by the properties.  Using the first method, for the stated period of 45-months (July 2005 through March 2009), she estimated the total lost rents were $450,000, or $10,000 per month.  She did not make a calculation using the second method.

## B.  *Appellant's Reimbursement Claims*

Ekhos testified that she has been a certified public accountant since 1999. The instant case was the first time she had served as a court-appointed expert.  She previously

worked for Mangini, the expert initially appointed by the trial court. She assisted him by preparing most of the schedules that he would present and testify about in family law cases. She had accompanied him to about a dozen trial dates and settlement conferences.

A prior settlement conference order required appellant to provide Ekhos with a list of his claims for separate property reimbursements, along with supporting documents. She testified that he never provided her with an itemized list of improvements made to the parties' properties. Instead, he gave her boxes of receipts documenting business expenses he had claimed on his tax returns over several years. The files were organized by year and by line item of the Schedule E filed with his tax returns. The information was not compiled in such a manner as to allow her to verify any claims he may have had for improvements made to the properties during the post-separation period. The difficulty arose from the tremendous volume of documents that would need to be individually reviewed and analyzed.

In conducting her analysis, Ekhos sampled the tax documents and did not go through every piece of paper. In each tax year she found claims made for improvements that she was unable to verify. In many cases, receipts for personal items were mixed with files that purportedly contained receipts for building materials. Thus, some of the receipts did not reflect appropriate deductions for building expenses. Additionally, she could not determine whether the building expenditures that she *was* able to verify were actually used for improvements to the rental properties.

A month or two after she received the tax documents, she asked appellant to provide further proof of his claims. She received spreadsheets from his accounting expert, Stuart Weil, reflecting adjustments to the returns. The adjustments showed business expenditures, but did not indicate whether the expenditures were made for improvements. They also did not address the receipts for miscellaneous personal expenses that she had discovered before, so the information was not much more specific than what she had already received. Weil did set forth a schedule of repairs and improvements for the period 1994 through 2008 totaling approximately $757,000. According to Ekhos, actual and theoretical rents collected and potentially collectable

6

from tenants would have been sufficient to cover the properties' fixed costs as well as the costs of appellant's claimed repairs and improvements.

Weil testified as a rebuttal witness on behalf of appellant. He is licensed as an attorney as well as a certified public accountant. He has testified as an expert witness in about 20 cases, the majority of which were family law cases. He read Ekhos's report and found it lacked a conclusion with respect to how much money, if any, appellant was entitled to as reimbursement. To arrive at an estimate of these costs, Weil's employees examined all the documents in the boxes of appellant's tax records.[4]

Weil's analysis showed there was a negative cash flow on the properties, and that money was spent on improvements that could not have been funded by the properties themselves. These would represent reimbursable claims, made with his separate property for the benefit of community assets. Weil's initial figure for these costs was $600,534 for the years 1994 through 2008. However, Weil recommended adjusting the amount, primarily to compensate for various accounting irregularities in appellant's records. Weil offset the initial amount by $314,271.50, leaving the total amount of estimated expenses for improvements at $286,262.50.

At the close of respondent's case, appellant moved for a directed verdict on her claim for breach of fiduciary duty. His counsel argued that while she might have been unhappy with his management skills, his conduct did not amount to a breach of fiduciary duty. In rebuttal, respondent's counsel relied on *In re Marriage of Munguia* (1983) 146 Cal.App.3d 853 (*Munguia*), in asserting that the spouse with control over community property after separation has a duty to maximize its value. The motion was denied.

### III. Posttrial Proceedings

At the close of trial, in lieu of closing argument, the parties each submitted a proposed statement of decision.

On February 2, 2011, the trial court filed its tentative statement of decision.

---

[4] At this point in the proceedings, the trial judge noted that the settlement conference order had specifically required appellant to have provided Ekhos with a list of all the improvements along with documentation. This was not provided to her, so therefore she had not gone through the boxes to categorize the documents and review all the receipts, as that was not her mandate.

On March 25, 2011, the trial court filed its final statement of decision. The court found in favor of respondent on her claim of breach of fiduciary duty. In particular, the court noted that of the 16 units in the three rental properties, 13 were habitable and, of these, 11 remained vacant. While not directly stating whether *Munguia* stands for the proposition that the spouse who controls community property after separation has an affirmative duty to maximize its value, the court found "The facts adduced in the present case demonstrate that far from maximizing the properties [*sic*] values, [appellant] ran them into the ground. The [appellant] ignored tenants' requests to perform repairs and the quality of the premises disintegrated under his regime. Occupancy declined and although the appraiser indicated that a significant number of the units were habitable and ready to be rented, they were not." The court used Ekhos's figure of $450,000, requiring him to give respondent $225,000 as the measure of her half of the lost community rents.

As to appellant's claim for reimbursement, the trial court found it was unable to determine the amount, if any, that he was entitled to, due to the unreliability of his tax returns and his failure to comply with the court's prior directives. Based on his demeanor and his testimony, the court also concluded he lacked credibility.

On May 2, 2011, the trial court filed a judgment setting forth its property division and equalizing the community estate. Respondent was awarded the 1444 9th Avenue property (valued at $330,000) and $330,632.50 in proceeds from the sale of 309 Foothill Boulevard, along with a net equalizing payment from respondent of $200,069, which included her share of the fictive lost rents. Appellant was awarded a one-half interest in the 900 Foothill Boulevard property (worth $275,000) and a $5,140 insurance check. Respondent was awarded attorney fees. This appeal followed.

## DISCUSSION

### I. Standards of Review

We review factual findings of the family court for substantial evidence, examining the evidence in the light most favorable to the prevailing party. (*In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 994.) " ' "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and

8

reasonable inferences indulged in [order] to uphold the [finding] if possible." ' [Citation.]" (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31.) We review issues of statutory interpretation de novo. (*Eidsmore v. RBB, Inc.* (1994) 25 Cal.App.4th 189, 195.)

## II. $450,000 in Fictive Community Income Charged to Appellant

Respondent alleged in her trial declaration that potential community rental income was improperly lost due to appellant's "mismanagement" of the parties' rental properties during a substantial period of separation. This was the basis of her claim for breach of fiduciary duty. In support of her claim, she relied largely on Smith's finding that in March 2009, 11 habitable units had not been rented out. She requested that appellant "be charged with the rents lost due to his failure to ready all units for the rental market and/or rent those units deemed to be habitable." In her trial brief, she contended he had "provided no evidence that he tried to rent the habitable units or tried to ready the other units for rent. In the absence of such evidence, [appellant] breached his fiduciary duty to [respondent]." She cited to *Munguia* for the proposition that, like the husband in that case, appellant "had a fiduciary duty to maximize the value of the properties by trying to rent them." The trial court noted appellant's contention that this aspect of *Munguia* was dicta only, but essentially agreed with it, finding that appellant "ran [the rental business] into the ground."

Appellant first claims that the fiduciary duty ruling must be reversed because it is based on the erroneous legal theory that he had a duty to maximize the value of the parties' community property. He also argues that the trial court erred in adopting Ekhos's calculation of lost rents because the court set a standard that "far exceeded" his responsibilities under the law. We agree with appellant that the trial court erred in relying on *Munguia* in imposing a requirement on him to have maximized the value of the rental properties.

9

Spouses have a duty to manage community property in accordance with "the general rules governing fiduciary relationships." (See Family Code, §§ 721, subd. (b)[5]; 1100, subd. (e)[6].) "This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." (§ 721, subd. (b).) Under section 1101, subdivision (a), "A spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate."[7]

---

[5]  All statutory references are to the Family Code unless stated otherwise.

Section 721, subdivision (b), provides: "Except as provided in Sections 143, 144, 146, 16040, and 16047 of the Probate Code, in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, including, but not limited to, the following: [¶] (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying. [¶] (2) Rendering upon request, true and full information of all things affecting any transaction which concerns the community property. Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions. [¶] (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property."

[6] Section 1100, subdivision (e), provides: "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request."

[7] If a spouse has breached his or her fiduciary duty, but not in a manner displaying fraud, malice, or oppression within the meaning of Civil Code section 3294, Family Code section 1101, subdivision (g), governs the applicable remedies. (Fam. Code, § 1101, subds. (g), (h).) Subdivision (g) provides that these remedies "shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs."

Appellant claims he was under a fiduciary duty that merely required him to perform to a standard "marginally better than gross negligence." Under Corporation Code section 16404, subdivision (c), made applicable here by operation of Family Code section 721, subdivision (b), "[a] partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership *business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law*."[8] (Italics added.) Relying on this provision, he asserts holding him culpable for failing to produce the maximum possible rental income is directly contrary to the law governing spousal fiduciary duties and is unauthorized. We agree. There is nothing in the relevant statutory language that equates a managing spouses' failure to maximize the value of the community's property with a breach of fiduciary duty to the non-managing spouse, and the trial court erred in relying on *Munguia* to justify such a finding.

*Munguia* involved valuation of a community property business that would have been worth at least 50 percent more if the managing spouse were able to renew the business's lease that was due to expire in eight months. In holding the trial court erred by choosing a lower value rather than reserving jurisdiction to see whether the lease was renewed, the appellate court observed in an aside that the spouse could have been under a "fiduciary duty to maximize the value of the [business] by securing a continuation of the lease." (*Munguia, supra,* 146 Cal.App.3d 853, 859.) This statement is dicta, and we have not located a published decision citing to it for the proposition that spouses have a fiduciary duty to maximize community income during periods of separation.

We find informative the appellate court's opinion in *In re Marriage of Partridge* (1990) 226 Cal.App.3d 120. As the court in *Partridge* noted, "The central issue in *Munguia* was the valuation of a community asset, a bar. The value of the bar was

---

[8] "The theory that there are degrees of negligence has been generally criticized by legal writers, but a distinction has been made in this state between ordinary and gross negligence. [Citation.] Gross negligence has been said to mean the want of even scant care or an extreme departure from the ordinary standard of conduct." (*Van Meter v. Bent Construction Co.* (1956) 46 Cal.2d 588, 594.)

11

directly dependent upon the length of its leasehold, a matter that had yet to be determined as of the time of trial. The appellate court simply held it was error for the trial court to adjudicate the value of the asset before the length of the leasehold was settled; instead, it should have reserved jurisdiction to do so once the lease length was determined. In dicta, the court noted that if the husband, who had sole management and control, were to be shown to have intentionally mismanaged the lease negotiations to thwart a long-term lease (thus breaching his fiduciary duty to the community), this could be taken into consideration in redetermining the value. [Citation.] Other than stating the undisputed principle that intentional mismanagement is a factor in valuation, the case does not support wife's position as it does not contain any benchmark by which it can be said husband's conduct amounted to intentional mismanagement." (*Id*. at p. 125.)

We also note respondent does not allege appellant failed to disclose any financial information or otherwise acted against her interests to secure any unfair benefit for himself. Further, he never concealed the lack of rental revenue from her, suggesting that she could have taken legal action to intervene instead of passively allowing the apartments to languish unrented. Viewed in that light, the trial court's decision to impute $10,000 per month in lost rental income to him is unsupported as a matter of law, and is arguably both unfair and unjust. We therefore reverse the portion of the judgment finding that he breached his fiduciary duty, and remand for the court to recalculate the net equalizing payment between the parties. This calculation must reflect the community property interest of the Chius as opposed to the ownership by any third party in the individual properties. Also, the trial court shall assess the payment obligation according to the legislative principles contained in Family Code section 721, subdivision (b), and its references to the legal standards articulated in Corporation Code sections 16403 and 16404, subdivision (c).

### III. *Reimbursement for Separate Property Contributions*

Section 2640 specifies that when dividing community property, a "party's contributions to the acquisition of property in the community property estate" shall be reimbursed "to the extent the party traces the contributions to a separate property source."

12

(§ 2640, subd. (b).)  In the seminal case of *In re Marriage of Epstein* (1979) 24 Cal.3d 76, superseded by statute on other grounds, our Supreme Court recognized a spouse's right to reimbursement from community property for payment of postseparation community expenses from the spouse's separate funds.  The high court adopted the view expressed in *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, as follows: " '[A]s a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution.' " (*Epstein, supra,* at p. 84, quoting *Smith, supra,* at p. 747.)  Conversely, if the managing spouse uses community money to pay a community obligation, there is no basis for reimbursing the spouse for that payment. (See *Smith, supra,* at p. 744 [judgment reimbursing husband for postseparation payments on community debts reversed because "there is no showing these payments by husband were made with his separate funds"; court ordered retrial rather than entry of judgment for wife because evidence suggested "some of the funds paid came from husband's . . . separate property"].)

On appeal, appellant asserts the trial court erred in denying his reimbursement claim as to the property located at 1710 15th Avenue.  He contends it is undisputed that he spent over $145,000 in separate property for expenses associated with the property, expenses that he asserts were documented by cancelled check, lender statement, and similar corroboration.  Respondent does not address the merits of this argument in her brief.  Instead, she contends generally that because he failed to itemize these claimed expenditures pursuant to the trial court's pretrial order he should be precluded from being reimbursed for any postseparation expenses.

The trial court denied all of appellant's claims for reimbursement, finding itself unable to accept the assumption that his tax returns and receipts were trustworthy.  As the trier of fact, the trial judge is the sole judge of credibility and "may reject any evidence as unworthy of credence, even uncontradicted testimony." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 979.)  It is not the function of this court to reweigh the

13

evidence.  Accordingly, we are unable to conclude that the trial court erred in denying appellant's request for reimbursement as to 1710 15th Avenue.

## DISPOSITION

The judgment is reversed as to the determination that appellant breached his fiduciary duty to respondent.  The matter is remanded for determination of the parties' equalization payment in a manner consistent with this opinion.  In all other respects, the judgment is affirmed.  Parties to bear their own costs on appeal.


_____
Dondero, J.


We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.


14