Filed 1/17/25

CERTIFIED FOR PUBLICATION
COURT OF APPEAL, FOURTH APPELLATE DISTRICT
DIVISION ONE
STATE OF CALIFORNIA

| | |
|---|---|
| KRYSTAL MAMER, | D084258 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FLHE2201925) |
| DAVID WEINGARTEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Sean P. Lafferty, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Westover Law Group and Andrew L. Westover for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In this parentage action, David Weingarten challenges an order denying his request that Krystal Mamer reimburse him for one-half of the costs of the in vitro fertilization procedure they used to conceive a child.  The family court ruled it had no authority to order reimbursement because the

costs had been incurred before Mamer filed the action. We reverse the challenged order.

BACKGROUND

Mamer and Weingarten were never married but agreed to conceive a child via in vitro fertilization (IVF) using Weingarten's sperm and a third party's egg and to raise the child together. They agreed to share the IVF costs, which totaled $55,635.

Approximately one month after the child was born, Mamer filed against Weingarten a petition to determine parental relationship under the Uniform Parentage Act (UPA; Fam. Code, § 7600 et seq.). Weingarten filed a response.

Weingarten later filed a request for an order directing Mamer to reimburse him for one-half of the IVF costs. He relied on Family Code section 7637, which provides that the judgment or order in an action under the UPA "may direct the parent to pay the reasonable expenses of the mother's pregnancy and confinement." Mamer opposed the request on the ground the statute did not authorize a court to order a mother to pay a father for any expenses of pregnancy.

The family court held a hearing and issued a minute order denying Weingarten's reimbursement request. The court ruled it had no authority under Family Code section 7637 to order reimbursement of expenses incurred before the parentage action was filed.

After Weingarten appealed the order denying his reimbursement request, the family court entered a judgment declaring Mamer and Weingarten to be the parents of the child. We construe the appeal as having been taken from the judgment. (See, e.g., *Northrop Corp. v. Stinson Sales Corp.* (1984) 151 Cal.App.3d 653, 655, fn. 1 [premature notice of appeal was

2

treated as taken from subsequent judgment]; *Moore v. Morhar* (1977) 65 Cal.App.3d 896, 900, fn. 2 [same].)

## DISCUSSION

Weingarten attacks on several grounds the family court's order denying his request for reimbursement of one-half of the IVF costs from Mamer. He faults the court for relying on what he considers inapplicable statutes and outdated cases disallowing reimbursement of expenses a parent voluntarily paid on behalf of a child before commencement of a parentage action. He contends the court's interpretation of Family Code section 7637 as limiting its authority to order reimbursement to expenses incurred after a parentage action is filed impermissibly adds a restriction to the statute and produces absurd consequences. Weingarten argues it is likely he would have prevailed on his reimbursement request had the family court properly interpreted and applied section 7637, and asks us to reverse the denial order.

Whether a statute gives a court authority to grant a particular type of relief is a question of statutory interpretation that we review de novo. (*Davis v. Fresno Unified School Dist.* (2023) 14 Cal.5th 671, 687; *County of Los Angeles Child Support Services Dept. v. Watson* (2019) 42 Cal.App.5th 638, 641; *N.S. v. D.M.* (2018) 21 Cal.App.5th 1040, 1047.) "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. [Citation.]" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826; accord, *People v. Barner* (2024) 100 Cal.App.5th 642, 648.) We give the words their usual and ordinary meaning and consider them in the context of the whole statute. (*Make UC a Good Neighbor v. Regents of*

3

*University of California* (2024) 16 Cal.5th 43, 55; *Goldstein v. Superior Court* (2023) 93 Cal.App.5th 736, 744.)

The statute under which Weingarten sought reimbursement from Mamer for one-half of the IVF costs provides: "The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. *The judgment or order may direct the parent to pay the reasonable expenses of the mother's pregnancy and confinement.*" (Fam. Code, § 7637, italics added.)[1] Where, as here, a child is conceived through IVF, the costs of the procedure qualify as "reasonable expenses of the mother's pregnancy" under the statute. Such costs were necessarily and voluntarily incurred to create from Weingarten's sperm and a third party's egg a zygote that was later implanted in Mamer's uterus with the objective of full-term development. (See Stedman's Medical Dict. (28th ed. 2006) p. 711 [defining

---

[1] When originally enacted, the statute provided: "The judgment or order may direct the *father* to pay the reasonable expenses of the mother's pregnancy and confinement." (Stats. 1992, ch. 162, § 10, italics added.) It was later amended to change "father" to "parent." (Stats. 2013, ch. 510, § 11.) The UPA defines " 'Parent and child relationship' " as "the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." (Fam. Code, § 7601, subd. (b).) " 'Natural parent' as used in [the UPA] means a nonadoptive parent established under [the UPA], whether biologically related to the child or not." (*Id.*, subd. (a).) "The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." (*Id.*, § 7602.) The UPA "does not preclude a finding that a child has a parent and child relationship with more than two parents." (*Id.*, § 7601, subd. (c).) The parents may be of the same gender. (*L.M. v. M.G.* (2012) 208 Cal.App.4th 133, 143.)

IVF].) Mamer and Weingarten "affirmatively intended the birth of the child, and took the steps necessary to effect in vitro fertilization. But for their acted-on intention, the child would not exist." (*Johnson v. Calvert* (1993) 5 Cal.4th 84, 93 (*Johnson*).) Additionally, the family court determined Mamer is a "parent" (Fam. Code, § 7637) in its judgment on the petition she filed under the UPA. That judgment "is determinative for all purposes" of the action. (*Id.*, § 7636.) We thus conclude Family Code section 7637 authorized the court to direct Mamer to pay IVF costs.

The family court erred by interpreting the statute as not permitting it to order Mamer to reimburse Weingarten for one-half of the IVF costs because he paid them before she filed the parentage action. When interpreting a statute, "the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858.) "A court may not, 'under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.) Family Code section 7637 does not except from the court's power to order payment of pregnancy expenses those incurred before a parentage action has been filed. A court "'"must assume that the Legislature knew how to create an exception if it wished to do so."'" (*DiCampli-Mintz*, at p. 992.) Where, as here, the Legislature has not created an exception, a court may not insert one into the statute.

Excepting pregnancy expenses paid before a parentage action is filed from those that Family Code section 7637 authorizes a court to order a parent to pay would frustrate the purpose of the UPA and would produce results unintended by the Legislature. In enacting the UPA, "the Legislature

recognized the value of having two parents, rather than one, as a source of both emotional and financial and support" for a child. (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 109, 123 (*Elisa B.*); accord, *E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1085–1086; see *Soon v. Kammann* (N.M. 2024) 557 P.3d 104, 110 [one of "the overarching policy goals of the UPA [is] to 'ensur[e] that a child will be cared for, financially and otherwise, by two parents' "].) The parents of a minor child "have an equal responsibility to support their child." (Fam. Code, § 3900.) Payment of expenses of the mother's pregnancy, which section 7637 expressly authorizes a court to direct a parent to pay in a UPA action, is part of both parents' support obligation. (*Guay v. Superior Court* (1957) 147 Cal.App.2d 764, 769; *De Sylva v. Ballentine* (1950) 96 Cal.App.2d 503, 511.) Under the family court's interpretation of the statute, the father could escape that obligation in most parentage actions, which, based on our experience and review of the published case law, are filed by the mother after the child is born. The court's interpretation also would deny recovery of pregnancy expenses when it might be needed most. For example, a single parent who incurred substantial medical expenses due to serious complications of an unplanned pregnancy and was unable to identify or locate the other parent and commence a parentage action until after the birth of the child could not recover those expenses from the other parent. Recovery would also be unavailable in the situation where a single parent relied on a romantic partner's promises of financial support to conceive a child through an expensive assisted reproduction procedure using the partner's gametes and was jilted by the partner after the child was carried to term. Because adoption of the family court's interpretation of section 7637 in many cases would defeat rather than promote the purpose of the UPA to have both

6

parents contribute to the support of their child and would lead to anomalous results, we reject that interpretation. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003; *County of San Diego v. Muniz* (1978) 22 Cal.3d 29, 36.)

The authorities the family court cited in its order denying Weingarten's reimbursement request do not support its interpretation of Family Code section 7637. The court cited three cases. One held a single mother had no cause of action against the father for reimbursement of support she had provided their child. (*Demartini v. Marini* (1920) 45 Cal.App. 418, 419.) The other two held a court could order a father to pay child support from the date the mother filed an action to establish paternity and to compel such support. (*Mathews v. Hornbeck* (1927) 80 Cal.App. 704, 706–707; *Richter v. Superior Court* (1963) 214 Cal.App.2d 821, 823–824). All three cases applied a statute that required "[t]he father as well as the mother, of an illegitimate child [to] give him support" and that authorized the mother, on behalf of the child, to file a "civil suit to enforce such obligation" against the father. (Civ. Code, former § 196a.) The statute contained no express provision for payment of expenses of pregnancy and was repealed three decades ago. (See Stats. 1992, ch. 162, § 2, eff. Jan. 1, 1994.) The cases predated enactment of the UPA and did not consider Family Code section 7637, which expressly authorizes a court in a parentage action to direct a parent to pay pregnancy expenses. (See *Johnson, supra*, 5 Cal.4th at pp. 88–89 & fn. 5 [discussing 1975 enactment of UPA and later recodification].) Cases are not authority for issues not considered. (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 631, fn. 6; *City of Ontario v. We Buy Houses Any Condition, LLC* (2024) 103 Cal.App.5th 1212, 1222.)

7

The family court also cited Family Code section 3951, subdivision (a) as support for the rule that "the law disallows reimbursement for costs a parent voluntarily pays." The statute, however, recognizes an exception applicable to this case: "A parent is not bound to compensate the other parent, or a relative, for the voluntary support of the parent's child, *without an agreement for compensation.*" (*Ibid.*, italics added.) Weingarten claimed in his reimbursement request that he and Mamer agreed to share the IVF costs equally, but when the costs came due, she told him she could not pay her share, and so he paid them all. Mamer did not deny this in her responsive declaration. Although Weingarten voluntarily paid all of the IVF costs, Mamer's agreement to pay half of them does not prevent him from seeking reimbursement for her share. Indeed, Family Code section 7637 expressly authorizes the court to order reimbursement should it determine the IVF costs constitute "reasonable expenses of the mother's pregnancy."

Our conclusion that Family Code section 7637 *authorizes* a court to direct a parent to pay expenses of pregnancy, including IVF costs, that were incurred before the parentage action was filed does *not* mean the statute *requires* a court do so. The statute provides the judgment or order in an action under the UPA "*may* direct the parent to pay the reasonable expenses of the mother's pregnancy." (*Ibid.*, italics added.) As used in the Family Code, " 'Shall' is mandatory and 'may' is permissive." (*Id.*, § 12.) "Ordinarily, when a statute provides a court 'may' do something, the statute is permissive, not mandatory, and grants the court a discretionary authority." (*Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1237.) Having ruled it had no authority to order Mamer to pay any of the IVF costs because Weingarten had paid them all before she filed the parentage action, the family court did not exercise its discretionary authority. The proper remedy in such

8

circumstances is to reverse the order denying Weingarten's reimbursement request and to remand the matter to allow the court to exercise its discretion. (*Center for Healthcare Education & Research, Inc. v. International Congress for Joint Reconstruction* (2020) 57 Cal.App.5th 1108, 1130; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

For the guidance of the family court on remand, we note that in exercising its discretion on whether or not to direct Mamer to pay a portion of the IVF costs, the court should consider the policy of the UPA that both parents contribute to the support of their child (*Elisa B., supra*, 37 Cal.4th at p. 123), the parents' incomes or earning capacities (Fam. Code, §§ 4055, 4058; *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 642), their agreement concerning payment of the IVF costs (Fam. Code, § 3951, subd. (a)), the reasonableness of those costs (*id.*, § 7637), and any other factors relevant to the reimbursement request. We express no opinion on how the court should ultimately exercise its discretion.

## DISPOSITION

The order denying Weingarten's request for reimbursement of one-half of the IVF costs is reversed, and the matter is remanded to the family court with directions to vacate its denial order and to conduct further proceedings as needed to rule on the merits of the request.  In all other respects, the judgment is affirmed.  Weingarten is entitled to recover costs on appeal.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


CASTILLO, J.

10